OSCAR F. HOLCOMBE ET AL. V. E. F. GROTA.

No. 7184. Decided March 3, 1937.
(102 S. W., 2d Series, 1041.)

*R. R. Lewis, W. M. Holland, Walter E. Boyd, G. W. Eddy,* and *Geo. D. Neal,* all of Houston, for plaintiffs in error.

On proposition that the office to which plaintiff seeks reinstatement was never legally created and that his cause of action was subject to general demurrer. Castleman v. Williams, 263 S. W. 638; Bennett v. City of Longview, 268 S. W. 786; Donges v. Beall, 41 S. W. (2d) 531; 34 Tex. Jur. 331, Sec. 7,

and 615, Sec. 162; State ex rel. Hanlon v. City of Maplewood, (Mo.) 99 S. W. (2d) 138.

*James E. Kilday, Homer Mabry,* and *George N. Lusch,* all of Houston, for defendant in error.

The Court of Civil Appeals did not err in overruling the defenses of the plaintiffs in error to the effect that the defendant in error did not plead the creation by ordinance of the office to which he sought reinstatement and the recovery of salary therefrom. Harris v. City of Huntington, 116 W. Va. 118, 178 S. E. 693; City of Paris v. Cabiness, 98 S. W. 925; Bland v. City of Taylor, 37 S. W. (2d) 291.

MR. JUDGE GERMAN of the Commission of Appeals delivered the opinion for the Court.

Defendant in error, E. F. Grota, instituted this suit in the District Court of Harris County against the City of Houston, the City Council, the Mayor, the Civil Service Commission, and other city officials having duties in connection with the payment of money by the City. He will be referred to as plaintiff, and the City and its officials will be referred to as defendants.

Plaintiff alleged that he had been duly appointed to the office of warrant officer for the Corporation Court of the City of Houston on March 24, 1930. By ordinance of the City Council this position is within the police department of the City. He claimed to have been reappointed to such position in March, 1933, and on April 29, 1933, upon order of the Mayor of the City, was dismissed therefrom. Claiming that his dismissal was unlawful for various reasons, principally because he was within the classified service of the City, and governed by the rules and regulations of the civil service, he sought to compel the Civil Service Commission to give him a hearing, and to reinstate him in the service. He further sought to recover the office and emoluments thereof during the time he was unlawfully deprived of same. There were also other alternative pleas. A general demurrer was sustained to his petition by the district court, and on appeal the judgment of that court was reversed and the cause remanded. A very elaborate and accurate statehent of many of the allegations of his petition is contained in the opinion by the Court of Civil Appeals reported in 97 S. W. (2d) 301.

The Court of Civil Appeals based its holding largely upon the prior decision by it in the case of Ellis v. Holcombe, 69 S. W. (2d) 449, in which writ of error was refused by the

Supreme Court. That case involved the rights of one who was only an employee, and not an officer, and it is in no manner authority here. According to the opinion of the court in that case Ellis held the position of "superintendent of the identification bureau of the police department of the city." That position is not mentioned in the ordinance establishing the police department. In the opinion it is further said: "We think the allegations of appellant's petition show that he is not an officer of the city, but a highly qualified expert employee working in the police department of the city." In the present case, the position which plaintiff seeks to recover is undoubtedly an office, provided it had any legal existence.

1   After an exhaustive study we have concluded that this case may be disposed of on one proposition alone. We have concluded that the office which plaintiff alleges he held by appointment had never been legally brought into existence, and whatever may be the view taken concerning the purpose of plaintiff's petition, the general demurrer was properly sustained.

It is well settled that one who seeks to be reinstated to a municipal office held by another, or who seeks to recover the emoluments thereof, must show that the office has been legally created and that he is lawfully entitled to hold the same and exercise the duties and powers thereof. As was said in the case of Moon v. City of Champaign, 214 Ill. 40, 73 N. E. 408: "He must show that he is an officer de jure. It is not enough that as to the public or as to third persons he is acting in an official character, and that as to them his acts in his official capacity have the force and virtue of the acts of an officer de jure." See also Toomey v. McCaffrey, 116 N. J. L. 364, 184 Atl. 835. It is of course fundamental that in the absence of an office de jure there can be no officer de facto. Hamrick v. Simpler, 127 Texas 428, 95 S. W. (2d) 357.

Section 16 of Article 2 of the Charter of the City of Houston is as follows:

"The City of Houston shall have power *by ordinance duly passed* to establish and maintain the City Police Department, prescribe the duties of policemen and regulate their conduct." (Emphasis ours.)

Section 13 of Article 2 of the Charter creates the Corporation Court and provides as follows:

"There shall be a clerk or clerks of said court, with such *deputies* as may be created or *provided by ordinance* by the City Council, who shall be appointed by the Mayor, and shall be

subject to removal at any time by the Mayor or City Council, and shall receive such salary as may be fixed by the City Council." (Emphasis ours.)

Section 1501 of the Revised Code of Ordinances of the City of Houston is as follows:

"The Police Department shall consist of Superintendent of Police, Inspector of Police, Captain of Police, Lieutenant of Police, Chief of Detectives, Captain of Humane Officers, Captain of Traffic Division, Clerk of Corporation Court, performing all the duties of Police Clerk, Assistant Clerk of Corporation Court, Secretary, Bertillon Operator and Custodian of Lost and Stolen Property, Clerk of Identification Bureau, Clerk of Detective Office, *Warrant Officers*, Sergeants, Turnkeys, Corporals, or Roundsmen, Motorcycle Officers, Detectives, Humane Officers, Traffic Officers, mounted or otherwise, Mounted Police Officers, Patrolmen, Watchmen, Juvenile Officers, Chauffeurs, Station Reserves and Short Calls, Building · Superintendent; and the Offices above mentioned are hereby created, *and as many persons shall be appointed to such offices by the Mayor and City Council from time to time, as in their judgment are necessary for the proper conduct and operation of the Police Department.*" (Emphasis ours.)

Section 1511 of the Revised Code of Ordinances of the City of Houston is as follows:

"Section 1511—Warrant Officers; Duties, Ex-Officio Deputy Clerks of Corporation Court—The Warrant Officers shall execute all warrants, writs, processes or summons issued from the Corporation Court, and shall assist the clerk of the Corporation Court whenever called upon so to do in the performance of his duties, and shall be ex officio deputy of such clerk of the Corporation Court."

2  The creation of a. municipal office is essentially a legislative matter. It is practically unanimously recognized that, in the absence of some special charter provision or legislative enactment, municipal offices can be created only by ordinance, and not by resolution or mere appointment. See Toomey v. Mc-Caffrey, supra, and authorities hereinafter cited. We think it perfectly clear that under the foregoing portions of the city charter it was intended that offices in the police department, and the position of deputy clerk in the corporation court, should be created only by ordinance; and our sole inquiry here is whether or not that has been done as regards the office which plaintiff seeks to recover.

**3** The only ordinance alleged to have been enacted by the legislative body of the City of Houston attempting to create the office occupied by plaintiff at the time of his dismissal was Section 1501 set out above, and we must determine whether or not it created the particular office in question. The plaintiff expressly alleged that at the time of his dismissal there were three persons, including himself, holding positions of warrant officer in the corporation court. He further alleged that at the time of the filing of his petition there were three persons holding these three positions. This becomes highly significant.

Except in the particular hereinafter mentioned, the ordinance creating the police department of the City of Houston was essentially the same as the ordinance of the City of San Antonio involved in the case of City of San Antonio v. Coultress, 169 S. W. 917. In spite of the criticism leveled at that decision, we are of the opinion that in its main holding it was and is in line with the great weight of decision. The following expressions from the opinion in that case will disclose the form of the ordinance and the holding of the court touching its sufficiency:

"The ordinance of the council of date March 2, 1903, wherein it was ordained that 'the police force of the city of San Antonio shall consist of one chief marshal and two assistant marshals, one police matron, and such detectives and mounted and unmounted patrolmen as the mayor and city council may deem necessary,' did not create the office of patrolman or policeman. If it did, how many such positions were created? It is true that section 65 gives the council the right to provide for that department, and by referring back to section 51, we see that it must be done by ordinance. If the ordinance quoted be relied upon to show the creation of the office, it will be noticed that no particular number is mentioned. The only limitation is such number as the mayor and city council 'may deem proper.' The only logical result or inference from this is that the mayor may appoint, and the council, by a simple resolution ratifying the same, may confirm, as many patrolmen as may be desired; and this in the face of the charter provision that it shall be done by ordinance."

"The ordinance of March 2, 1903, does not specify the number of policemen or patrolmen, and does not create that office. It does not say that there shall not be more than a certain number. The powers of the city council granted it by the state in its charter cannot be delegated to the mayor or to the police committee, but can only be exercised as therein pointed out, viz., by ordinance. And this has not been done. It is no answer

to say that occasions frequently arise when the force should be either larger or smaller, because the council could provide for such emergencies."

The only difference between the San Antonio ordinance and the one here under review is that in the latter, after an enumeration of the various positions in the police department, including "warrant officers, it is recited: "And the offices above mentioned are hereby created." The inquiry, however, is immediately presented as to warrant officers: How many offices were created? An ordinance attempting to create an indefinite number of offices without a maximum limitation is void. It is evident that no fixed number was intended, else the language which follows would have been meaningless. That language is as follows: "And as many persons shall· be appointed to such offices by the Mayor and City Council from time to time as in their judgment are necessary for the proper conduct and operation of the police department." It seems to us wholly inconsistent to say that offices are created and at the same time it is declared that the Mayor and City Council may by mere appointment of incumbents expand or reduce the number of such offices at their discretion. Such an indefinite method of creating an office or offices is fatal. Hamrick v. Simpler, 127 Texas 428, 95 S. W. (2d) 357. If this language allowing the Mayor and City Council to bring into existence as many offices of warrant officer from time to time as their judgment may dictate is to be given effect, then it is just as uncertain and indefinite as was the language in the San Antonio ordinance.

It seems to us that the only reasonable construction of the language of the ordinance is this: That an office known as "warrant officer" is designated, or perhaps potentially created, but that the number of such offices coming into actuality is to be determined from time to time by the "Mayor and City Council" in their legislative capacity, acting in the· manner usually pursued in the enactment of municipal legislation, to-wit, by ordinance. If it takes the subsequent act of the Mayor and City Council to bring into actual existence the office, then it necessarily follows that the office would thus be created, and unless done by ordinance, rather than by mere appointment, would necessarily be in violation of the charter. At the most, the ordinance did not create more than one office of warrant officer, and an attempt to bring into actuality other offices other than by ordinance was necessarily void. But if it be assumed that one office was created by ordinance 1501, this does not aid plaintiff, because he expressly alleged that there were three persons holding positions of warrant officers, and did not allege

that he was entitled to the particular office created by the ordinance in question. In this connection see the case of O'Neill v. Williams, 53 Cal. App. 1, 199 Pac. 870.

In the case of Keegan v. Mayor of the City of Bayonne, 81 N. J. Law 120, 78 Atl. 1053, by the Supreme Court of New Jersey, the court used language which we think directly applicable here. In that case it was said:

" * * By the charter the power to establish, regulate, and control a police force in the city must be exercised by ordinance, but the ordinance under consideration confers upon the mayor and council the power to appoint not only two sergeants, but as many more as they may see fit; that is, it is attempted to empower them to appoint an indefinite number of police sergeants, who are to perform such duties as the mayor may prescribe, and the council approve, thereby establishing, regulating, and controlling the police force by a method other than by ordinance as required by the charter. The fixing of the number of officers and the prescription of their duties is an essential part of the establishment and regulation of a police department, and this the charter under consideration requires shall be by ordinance, and it is not a compliance with the charter to ordain that the mayor and council may appoint as many police sergeants as they may determine upon, with the power to prescribe all their duties, for that would delegate to the appointing power the determination of how many police sergeants there should be, and also what duties they should each perform. This would effect the establishment, regulation, and control of the police department not by ordinance, but by appointment. If the words 'or more' be treated as surplusage and the ordinance held to provide for two such officers, they were both filled when this appointment was attempted, and there was no office provided by ordinance to which the respondents could assign the relator."

In the case of Moon v. Mayor of City of Champaign, 214 Ill. 40, 73 N. E. 408, the Supreme Court of Illinois used this appropriate language:

"The petition set forth the adoption by the city council of the city of Champaign of an ordinance establishing a police department. Section 355 of this ordinance, which seems to be relied on by appellant as creating the office of policeman, is as follows: 'The police department of the city of Champaign shall consist of the mayor, the aldermen, the police magistrate, who shall be ex officio members of the police department, and

a chief of police, and as many policemen as the city council may from time to time provide for, and one keeper of the city prison, and such other officers as are given police power by ordinance of the city.' This section of the ordinance does no more than to create the police department of the city and to declare what officers of the city should compose the department. The provision that the police department should consist, in part, of 'as many policemen as the city council may from time to time provide for,' cannot be construed to create any one or more offices of policemen of the city. Its true meaning is that the police department of the city shall comprise such policemen as shall be legally invested with that office. The section does not itself purport to create the office of policeman, and it has no such legal effect. It does not appear from the petition that the city council had before that adopted an ordinance creating the offices of policemen of the city or that such an ordinance has since then been adopted. The office of policeman or police patrolman was unknown to the common law. It exists, therefore, only when created by the statute, or by a municipal ordinance adopted by authority of the statute."

In the case of State v. Mackie, 82 Conn. 398, 74 Atl. 759, 26 L. R. A. (N. S.) 660, by the Supreme Court of Errors of Connecticut, the court used this very significant language:

"The source of the alleged office here in controversy is a city ordinance. The state had delegated to the city in its charter the power to provide for the appointment of a building inspector, and to prescribe his duties. It had not delegated the power to provide for the appointment of a deputy building inspector, and to prescribe his duties. The city was without inherent power to create such a public position and to endow it with the jurisdiction and authority attempted to be conferred. No such power was impliedly granted by the charter provision referred to. The right to create one office does not imply the right to create two. The right to provide for the appointment of an officer does not involve or imply the right to provide for substitutes and alternates ad libitum. The right to prescribe the power and duties of a designated official, and to endow him with that power, does not carry with it the right to endow several persons in the alternative with that power."

See also the following cases: Craft v. Richie, 225 Ky. 652, 9 S. W. (2d) 986; Bullis v. City of Chicago, 235 Ill. 472, 85 N. E. 614; People v. Coffin, 282 Ill. 599, 119 N. E. 54; Hale v. City Council, 99 N. J. L. 334, 123 Atl. 724.

4 Plaintiff strongly insists that the decision of the Court of Civil Appeals in the case of City of San Antonio v. Bodeman, 163 S. W. 1043, sustains his contention that the allegations of his petition as regards the creation of the office were sufficient. There may have been some force to this contention, except for the fact that plaintiff undertook to anticipate the City's defenses, and attempted to specifically allege the various acts of the City creating the office. For instance he alleged that by virtue of Section 1511 of the Revised Ordinances, set out above, he was, in his position as warrant officer, an ex officio deputy clerk of the Corporation Court. However, Section 13 of Article 2 of the city charter expressly provides with reference to the Corporation Court that there shall be a clerk or clerks of said court, "with such *deputies* as may be created or provided by *ordinance* of the City Council." He failed to allege any ordinance creating the position of deputy clerk which he sought to recover. It follows, therefore, that in light of his specific allegations the Bodeman case is not in point. Besides, the Court of Civil Appeals which wrote that opinion expressly stated that it had no application in the Coultress case.

The conclusion which we have reached is strongly supported by the conclusion of the learned district judge who heard exhaustive arguments in the case. Speaking of the police department of the City of Houston, and the necessity of stabilizing same, so as to make effective the civil service system, he said:

"The thing that would have rendered it stable was to remove the indefiniteness that theretofore existed in reference to the number of persons that should constitute the roll of policemen; that should constitute the number of warrant officers. The people were, and are, entitled to know how many persons were going to be on their payroll, and up to this time no ordinance declares how many policemen, how many warrant officers have been created. No ordinance informs us whether it consists of a large number of officers and one policeman or of the commanding officers and a thousand privates. The indefiniteness still exists and the Civil Service program has failed because of the failure of the City Council to do that thing which the ordinance, and every intendment, implication and suggestion of the ordinance called on them to do."

We are of the opinion that the conclusion thus expressed by the trial court was fully justified from a consideration of all the allegations of plaintiff's petition, and the authorities herein cited.

But it is argued that even though the office which plaintiff

seeks to recover had no legal existence, nevertheless he was in the employment of the City, and was within the classified service. He therefore says that he should be put upon the classified list of those eligible to appointment, according to the rules and regulations of the Civil Service Commission. This precise question was in principle considered in the case of Toomey v. McCaffrey, 116 N. J. Law 364, 184 Atl. 835, and decided adversely to plaintiff's contention.

The judgment of the Court of Civil Appeals is therefore reversed and the judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court March 3, 1937.