**CITY OF DALLAS et al. v. McDONALD et al.**

Motion No. 12721; No. 6766.

Supreme Court of Texas.

March 31, 1937.

H. P. Kucera, City Atty., and A. J. Thuss and J. Manuel Hoppenstein, Asst. City Attys., all of Dallas, for plaintiffs in error.

Claude C. Westerfeld and Harold Young, both of Dallas, for defendants in error.

GERMAN, Commissioner.

Upon careful reconsideration we have concluded that we were in error in affirming the judgment of the Court of Civil Appeals. The opinion heretofore rendered in this case on November 4, 1936, reported in 98 S.W.(2d) 167, is hereby withdrawn, and the following shall constitute the opinion of the court:

Defendants in error, C. M. McDonald and five others, who will be referred to herein as plaintiffs, instituted this suit in the district court of Dallas county against the city of Dallas and its governing officials, as well as the Civil Service Commission, seeking mandamus to compel their reinstatement as policemen in the police department of the city of Dallas. The suit was essentially one for mandamus, but there was an alternative plea that plaintiffs be entitled to recover their salaries for unexpired terms of their respective offices. Judgment was against them in the trial court, which judgment was reversed by the Court of Civil Appeals and judgment rendered in their favor. 69 S.W.(2d) 175.

The material allegations relied upon by plaintiffs are set forth in the opinion of the Court of Civil Appeals in this language: "For cause of action, appellants allege, in substance, that, prior to the adoption of the present charter of the city of Dallas (1931), each was duly appointed and qualified as a regular policeman of the city, and had been actively and continuously engaged as such officer from nine to fourteen years, under the existing provisions of said charter (article 14, § 34), authorizing their tenure in office, during good behavior, and removal for cause; that on May 1, 1931, the city charter was amended, creating a civil service board of three members, to promulgate rules and regulations governing

the conduct and efficiency of civil service employees, providing additional grounds for removal, and creating a special tribunal to discharge them; that the governing authorities, without fault on appellants' part and without assigning any reason therefor, illegally discharged them, have persistently refused to allow them to perform any duties as such officers, and the city of Dallas has declined to pay their salaries for the unexpired terms of their offices. Appellants further alleged that they secured their positions by appointment from the city manager, acting under the provisions of the present charter, and can only be removed from office by charges duly presented and a trial before the tribunal provided by said charter amendments; that no such charges have been preferred, no such trial had, nor have they been guilty of any misconduct which would justify their removal."

■ In the case of Oscar F. Holcombe et al. v. E. F. Grota, 102 S.W.(2d) 1041, decided March 3, 1937, we have held that one who seeks by mandamus to be reinstated to a municipal office, and who claims the rights and emoluments of such office, must show that the office legally existed and that he is lawfully entitled to hold it and enjoy the emoluments of same. In addition to the authorities referred to in that opinion, we here note the additional case of Burley et al. v. Barber, Mayor, et al., 286 Ill.App. 486, 3 N.E.(2d) 939, 942, which we think clearly states the applicable rule. After a reference to the case of Moon v. Mayor of City of Champaign, 214 Ill. 40, 73 N.E. 408, the court says:

"As is said in that case: It is not sufficient to entitle appellants to the writ that it should appear from the petition merely that petitioners were de facto police officers. Petitioners assert the right based upon their alleged official character to exercise the duties and authority of police officers and to receive the salary therefor. 'The rule is that, when one claims rights as an officer by virtue of his office, it must appear that the office legally exists and that he is lawfully entitled to hold the same and exercise the duties and powers thereof. He must show that he is an officer de jure. It is not enough that as to the public or as to third persons he is acting in an official character, and that as to them his acts in

his official capacity have the force and virtue of the acts of an officer de jure.'

"It was therefore essential that the petition should show that the petitioners were officers de jure, and not merely de facto, policemen. It does not appear from the petition that the office which appellants claim the right to hold and exercise had or has any legal existence."

■ In the present case we think it appears that plaintiffs not only failed to prove the existence of the offices in which they sought to be reinstated, but that it affirmatively appears that such offices have never been legally created by the legislative authority of the city of Dallas. Section 44 of the charter of the city of Dallas creates the police department, which is placed under the control of the city manager. Section 66 of the charter provides: "The Police Department shall be composed of the Chief of Police and of such other officers, patrolmen and employees as the City Manager may determine."

It will be noted that this section does not empower the city manager to create offices. That is primarily a legislative function, and, even if such power could be conferred by the charter upon an administrative officer (which we need not decide), it is certain that it should be conferred in express and definite language. All that this section purports to do is to authorize the city manager to determine what personnel shall man the police department, such as officers, patrolmen, and employees, and the number thereof. One of the fundamental purposes of the provision for a city manager was to create a salutary check upon the legislative department in the creation of offices and places of emolument. It is further obvious, however, that the power granted to the city manager was not in any manner to take from the power of the city council to create offices within the police department, but was merely intended as a restraint upon the exercise of such power. This is apparent from the further provisions of section 44 of the charter as follows:

"The Council shall have power by *ordinance* to establish other departments and *offices*. The Council may discontinue any department or office established by ordinance and may prescribe, combine, distribute or abolish the functions and

duties of departments and offices, but no function or duty assigned by this Charter Amendment to a particular department or office shall be abolished or assigned to any other department or office; provided, that the Council may, if it deems it advisable, consolidate into one department not more than two of the departments hereby established. No administrative department or office created by ordinance shall be established or discontinued, and no consolidation as hereinbefore provided shall be made *until the recommendation of the City Manager thereon shall have first been heard by the Council.*" (Italics ours.)

Thus it is seen that the power to create offices within the police department is expressly conferred on the city council, but is to be exercised when the city manager "may determine" as to the necessary personnel of such department, and on his recommendation. It is especially declared by the charter that offices are to be created by ordinance. This negatives the idea that they may be created by the city manager. In the present case the pleadings referred to plaintiffs as officers and as holding offices. · Section 69 of the charter provides as follows:

"The officers and privates constituting the Police Department of the City of Dallas shall be and they are hereby invested with all the power and authority given to them as peace officers under the laws of the State of Texas in taking cognizance of, and in enforcing the criminal laws of the State and the ordinances and regulations of the city within the limits of the city, and it shall be the duty of each such officer and private to use his best endeavors to prevent the commission within the city of offenses against the laws of said State and against the ordinances and regulations of said city; to observe and enforce all such laws, ordinances and regulations; to detect and arrest offenders against the same; to preserve the good order of the city and to secure the inhabitants thereof from violence, and the property therein from injury. Such policemen shall execute any criminal warrant or warrants of arrest, or any writ, subpoenas or other process that may be placed in their hands by the duly constituted authorities of the city."

There was no effort made by plaintiffs to prove any ordinance of the city council of the city of Dallas creating any offices of policemen within the police department, or prescribing the number of police officers or patrolmen. On the contrary, it is obvious that plaintiffs relied upon the assumption that the city manager could by making appointments bring into existence as many offices as he might from time to time determine were proper and necessary. Each of the plaintiffs relied upon an instrument designated "Warrant of Appointment" as the source of his authority, and as constituting evidence of the legal existence of the office sought to be recovered by him. These warrants of appointment among other things contain the following:

"Know All Men by These Presents: That I, John N. Edy, City Manager of the City of Dallas, do, in conformity with the Charter of the City of Dallas and the laws of the State of Texas, hereby, on behalf and in the name of the City of Dallas, appoint (Name of appointee) to the position of Police Officer in the Police Department of the City of Dallas for the fiscal year beginning October 1st, 1932, and ending September 30th, 12 P. M., 1933, and empower him to discharge all and singular the duties of said position according to law and subject to the Civil Service provisions of the City Charter and other provisions thereof and of the ordinances of the City of Dallas and the laws of the State of Texas."

We think it affirmatively appears, therefore, that plaintiffs failed to show that the respective offices claimed by them were ever legally brought into existence, and therefore no mandamus could issue requiring their reinstatement to such positions. Courts will not undertake to do the anomalous thing of requiring reinstatement into an office which does not legally exist. There being no office de jure, plaintiffs were not officers de facto in the sense that they could recover emoluments for unexpired terms. There could be no unexpired terms of offices having no legal existence.

The former judgment entered in this case is set aside, the judgment of the Court of Civil Appeals is reversed, and the judgment of the District Court is affirmed.

Opinion adopted by the Supreme Court.