8 So.2d 611

GARNIER v. LOUISIANA MILK COMMISSION et al.

No. 36514.

April 27, 1942.

Rehearing Denied May 25, 1942.

Eugene Stanley, Atty. Gen., Edward L. Gladney, Jr., Sp. Asst. Atty. Gen., and A. M. Suthon, Sp. Asst. Atty. Gen., for appellants.

Ponder & Ponder, of Amite, for appellee.

McCALEB, Justice.

The plaintiff, Wade J. Garnier, sought an injunction in the Nineteenth Judicial District Court for the Parish of East Baton Rouge against the Louisiana Milk Commission and the members thereof, T. D. Dyer, Harry D. Wilson, Dr. J. H. Musser, Dr. E. P. Flower, A. G. Compton and H. G. Vernon, restraining them from removing or attempting to remove him from the office of Secretary of the Commission. He filed an original and two supplemental and amended petitions in which he alleged, in substance, that he is legally appointed Secretary of the Louisiana Milk Commission having been selected in the manner provided for by Act No. 195 of 1938; that on August 26th, 27th and 28th, 1940, at a meeting of the Commission regularly scheduled and called at Shreveport, Louisiana, he was, by resolution of the Commission, unanimously retained as its Secretary under a term of employment to extend from the date thereof to August 31, 1942, inclusive, at a salary of $5,000 per annum; that, in accordance with the resolution and contract of employment, he continued to serve and satisfactorily fulfilled the duties assigned to him as Secretary of the Commission and that, notwithstanding this, the members of the Commission, at a meeting held on July 25, 1941, illegally attempted to discontinue his employment and appoint, as his successor, T. D. Dyer, one of the defendants to the suit. He further averred that the action of the members of the Commission in attempting to discharge and replace him as Secretary is ultra vires and without justification or cause for the reason that his contract of employment had not expired and would not expire until September 1st, 1942, and further, in the alternative, that the resolution of the Commission was invalid and of no effect because there were only three legal votes cast in favor of said resolution, or less than a majority of the membership of the Commission, since Dr. E. P. Flower, one

of the defendants who voted for the resolution, is not and never has been a duly constituted member of the Commission and had no right to sit and take part in the proceedings which resulted in the attempted ouster of petitioner. Plaintiff prayed that, in view of the unlawful acts complained of, the defendants be cited to show cause why they and each of them should not be restrained and enjoined from interfering with him in the performance of his duties as Secretary of the Louisiana Milk Commission, and that, in the meantime, they be temporarily restrained from acting upon the resolution allegedly passed at the meeting held on July 25, 1941.

Upon the showing made by the plaintiff in his pleadings, the trial Judge issued a temporary restraining order and also a rule upon the defendants to show cause why the relief sought by the plaintiff should not be granted.

After certain preliminary delays, the individual members of the Milk Commission appeared and filed separate, but identical, exceptions to plaintiff's petitions. These exceptions are: (1) to the citations; (2) to the jurisdiction of the Court, ratione materiae and personae; (3) inconsistency of demands, and (4) no right or cause of action.

With full reservation of these exceptions, the defendants answered. They admitted that the resolution of July 25, 1941, had the effect of discontinuing the services of the plaintiff as Secretary of the Louisiana Milk Commission, but they averred that the resolution was properly and lawfully passed and that they acted within their rights in terminating plaintiff's employment notwithstanding the fact that his contract had not yet expired. They further asserted that Dr. Flower was a lawfully constituted member of the Commission; that he was recognized as such by all the members thereof (including the plaintiff) and that, he was, therefore, entitled to take part in the proceedings of the Commission and cast a legal vote in favor of the resolution of July 25, 1941.

Upon the hearing of the case on the rule nisi, the Judge of the lower Court overruled all of the exceptions filed by the defendants and, after considering the case upon its merits, he refused to issue the injunction prayed for by the plaintiff. The Judge, however, recognized the validity of plaintiff's contract of employment as Secretary of the Commission for the term expiring September 1st, 1942, and, holding that the defendants had no right to discharge plaintiff without cause, granted judgment in plaintiff's favor for the amount of compensation due and to become due during the tenure of his employment less such amounts as had been previously paid to him.

All of the defendants have appealed from the adverse judgment of the Court below and plaintiff has answered the appeal requesting that the judgment be amended so as to grant him the injunction prayed for in his pleadings.

Counsel for the defendants do not press in this Court any of the dilatory exceptions filed by them in the lower Court and they state in oral argument and in brief

that there are only three issues presented to us for decision, namely:

1. Whether or not the plaintiff is entitled to the monied judgment rendered in his favor by the Court below;

2. Whether or not he is entitled to the injunction (which is what he has actually prayed for rather than a monied judgment), and

3. Whether or not he may properly in these proceedings raise any issue as to the right of the defendant, Dr. Flower, to serve and vote as a member of the Louisiana Milk Commission.

In view of the foregoing, our consideration and determination of the case will be confined to the questions raised by the defendants.

■ That the District Judge committed error in granting to the plaintiff a monied judgment for the amount of salary due and to become due as Secretary of the Milk Commission, we entertain no doubt whatever. It is well settled that the character of an action is fixed by the prayer of the petition. See Rudd v. Land Co., 188 La. 490, 177 So. 583. The plaintiff is proceeding summarily for an injunction and he has asked for that relief solely on the theory that he has no adequate remedy at law in an ordinary suit for damages for breach of contract. Where a plaintiff has two remedies, one summary and one ordinary, and elects to proceed in a summary manner, he is not entitled to the relief which might have been attained by an ordinary proceeding even though his petition contains a prayer for general and equitable relief. See

State ex rel. Brown v. United Gas Public Service Co., 197 La. 616, 2 So.2d 41, 44, where it is said that:

" 'The action must stand or fall as originally brought.' To decide otherwise, it was held in South Louisiana Land Co. v. Riggs Cypress Co., 119 La. 193, 43 So. 1003, 1005, 'would be going beyond the scope of a prayer for general relief.' "

The next question presented for consideration is whether the plaintiff is entitled to have the defendants enjoined from removing or attempting to remove him as Secretary of the Milk Commission. Plaintiff's main contention is that the defendants are without right to oust him from his position without just cause because he was employed for a fixed term which ends September 1st, 1942. The defendants, on the other hand, maintain that, inasmuch as Act No. 195 of 1938, wherein the Louisiana Milk Commission is given authority to appoint from its membership a Secretary under such regulations as it may adopt, does not establish the tenure of the office of Secretary, the Commission is vested with full power to remove the plaintiff at its pleasure in spite of the fact that the term of plaintiff's employment was fixed in the resolution appointing him.

The pertinent portion of Section 2 of Act No. 195 of 1938 provides as follows:

"The said Louisiana Milk Commission shall, under regulations adopted by it, appoint its own Chairman and Vice-Chairman, and also a Secretary at a salary not to exceed Five Thousand Dollars ($5,000.00) per annum."

■ The right granted to the Commission by the foregoing provision does not prescribe the tenure of the Secretary's office, and it is the universally accepted rule that, where the term of the office is not fixed by law, the power to remove is an incident to the power to appoint. Hence, plaintiff's office is held by him during the pleasure of the authority making the appointment. See 22 Ruling Case Law, Section 266, page 562; 46 Corpus Juris, Section 146, page 985.

This case may not be distinguished in principle from our decision in Potts v. Morehouse Parish School Board, 177 La. 1103, 150 So. 290, 91 A.L.R. 1093, where we recognized the above stated rule of law and concluded that Potts, although employed as Assistant Superintendent of Schools for Morehouse Parish for a stated term, held his appointment at the pleasure of the Board; that the latter had no right to bind itself to retain him as such and that it had the absolute authority to remove him without cause. See, also, Peters v. Bell, 51 La.Ann. 1621, 26 So. 442, 445; Ehret v. Police Jury, 136 La. 391, 67 So. 176, and Kirkpatrick v. City of Monroe, 157 La. 645, 102 So. 822.

Plaintiff's counsel attempt, in oral argument and in brief, to differentiate between the decision in the Potts and other cases above cited and the case at bar on the ground that, since Act No. 195 of 1938 provides that the Secretary of the Milk Commission may be appointed under regulations adopted by the Commission, the latter has the right to bind itself by the tenure fixed in the resolution of appointment.

■■ The argument is not impressive, because, as we have stated, the rule followed in the Potts case is founded on the theory that the implied power of the appointing authority to remove cannot be contracted away where the statute granting the power to appoint does not fix the tenure of the office. It, therefore, follows that the plaintiff is not entitled to an injunction against the defendants restraining them from cancelling by appropriate resolution his contract of employment expiring on September 1st, 1942.

Being of the opinion that the Milk Commission has the authority and power to remove the plaintiff from office, we consider the remaining question in the case, viz., that the resolution of the Commission of July 25, 1941, appointing the defendant Dyer as Secretary is null because it was not passed by a majority of the members of the Commission. Plaintiff's contention is predicated upon the premise that Dr. E. P. Flower, who voted for the resolution, was not a legally constituted member of the Commission and, hence, there were only three votes, or less than a majority, cast in favor of its passage.

Defendants' counsel assert that plaintiff's contention is not well founded for three reasons:

1. That Dr. Flower is a de jure member of the Commission having been designated as such by Section 2 of Act No. 195 of 1938.

2. In the alternative, that he is a de facto member and

3. That, in any event, plaintiff is without right to attack collaterally Dr. Flower's

membership on the Commission and that, since plaintiff and the other members of the Commission permitted Dr. Flower to serve as a member, without objection, they cannot question his qualifications.

Act No. 195 of 1938, which created the Louisiana Milk Commission, provides in Section 2 that its membership shall be composed of the following seven persons:

"(1) President of the Louisiana State Board of Health.

"(2) The Commissioner of Agriculture and Immigration of the State of Louisiana.

"(3) The Executive Secretary of the Louisiana State Live Stock Sanitary Board of the Louisiana State University and Agricultural and Mechanical College.

"(4) And four members to be appointed by the Governor."

█ Dr. Flower has not been appointed to membership of the Commission by the Governor. He, however, claims that, since he is the "Secretary of the Louisiana State Live Stock Sanitary Board", he falls within the designation made in the statute as an ex officio member of the Commission. The difficulty with his claim is that he is not "The Executive Secretary of the Louisiana State Live Stock Sanitary Board of the Louisiana State University and Agricultural and Mechanical College", which is the officer named in the law.

The defendants, in arguing that Dr. Flower is a de jure member of the Commission, concede that there is no officer in this State bearing the title designated in Act No. 195 of 1938, but they contend

that, since Dr. Flower holds an office with a title which somewhat resembles the officer named, it was obviously the intention of the Legislature to make the Secretary of the Louisiana Live Stock Sanitary Board a member of the Commission and that this Court should so declare.

To hold that, when the Legislature named the Executive Secretary of the Louisiana Live Stock Sanitary Board of the Louisiana State University and Agricultural and Mechanical College as an ex officio member of the Commission, it intended to designate the Secretary of the Louisiana State Live Stock Sanitary Board would be tantamount to rewriting the statute. The designation made in the act is clear and unambiguous and, under such circumstances, there is no room for judicial interpretation as to its meaning. This is not a case of the misspelling of a word in a legislative act, nor is it a case where there can be any doubt as to the officer named as a member of the Commission. In this situation, the Court is barren of right to substitute the ideas of defense counsel in place of the clear designation made by the Legislature and thus usurp the functions of that branch of the Government.

█ Counsel for the defendants nevertheless maintain that Dr. Flower is, at least, a de facto member of the Commission since he is, in possession of the office under an apparent color of title. This contention would have force were it not for the fact that it is conceded by the parties to the litigation that the office "The Executive Secretary of the Louisiana State Live Stock Sanitary Board of the

Louisiana State University and Agricultural and Mechanical College" named in the statute does not exist. In this circumstance, the case is governed by the well-established rule that one may not claim to be a de facto officer unless there is a de jure office in existence. See Norton v. Shelby County, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178; Lower Terrebonne Ref. & Mfg. Co. v. Police Jury, 115 La. 1019, 40 So. 443, 112 Am.St.Rep. 291; Board of Public Utilities v. New Orleans Ry. & Light Co., 145 La. 308, 82 So. 280; State ex rel. Tamminen v. Eveleth, 189 Minn. 229, 249 N.W. 184, 99 A.L.R. 289; Bedingfield v. First Nat. Bank, 4 Ga.App. 197, 61 S.E. 30; Ward v. Cook, 78 Ill.App. 111; City of Metropolis v. Industrial Commission, 339 Ill. 141, 171 N.E. 167; Johnson v. Industrial Commission, 326 Ill. 553, 158 N.E. 141; Jay v. Board of Education, 46 Kan. 525, 26 P. 1025; Farrington v. New England Invest. Co., 1 N.D. 102, 45 N.W. 191; Schulte v. Wilke, 167 Ala. 663, 52 So. 526; Jester v. Spurgeon, 27 Mo.App. 477; Herrington v. State, 103 Ga. 318, 29 S.E. 931, 68 Am.St.Rep. 95; Miller v. Brown, Tex.Civ.App., 216 S.W. 452, and Holcombe v. Grota, 129 Tex. 100, 102 S.W.2d 1041, 110 A.L.R. 234. Compare United States v. Royer, 268 U.S. 394, 45 S.Ct. 519, 69 L.Ed. 1011 and Davenport v. Davenport, 116 La. 1009, 41 So. 240, 114 Am.St.Rep. 575.

In the case of Norton v. Shelby County, supra, the Supreme Court of the United States, through Mr. Justice Field, after setting forth that considerations of public policy have prompted the courts to es-

tablish the doctrine maintaining the validity of acts performed by de facto officers, remarked [118 U.S. 425, 6 S.Ct. 1125, 30 L. Ed. 178]:

"But the idea of an officer implies the existence of an office which he holds. It would be a misapplication of terms to call one an 'officer' who holds no office, and a public office can exist only by force of law. This seems to us so obvious that we should hardly feel called upon to consider any adverse opinion on the subject but for the earnest contention of plaintiff's counsel that such existence is not essential, and that it is sufficient if the office be provided for by any legislative enactment, however invalid. Their position is that a legislative act, although unconstitutional, may in terms create an office, and nothing further than its apparent existence is necessary to give validity to the acts of its assumed incumbent. That position, although not stated in this broad form, amounts to nothing else. It is difficult to meet it by any argument beyond this statement: An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."

The Norton case involved the validity of acts of commissioners whose offices were created under an unconstitutional statute of the State of Tennessee. The Court concluded that:

"Where no office legally exists, the pretended officer is merely a usurper, to whose acts no validity can be attached. * * *"

In a comprehensive and interesting comment on the necessity for the existence of a de jure office in order for a possessor to be a de facto officer found in 99 A.L.R. Annotated, pages 294 through 317, it is stated that:

"Although the cases present a decided and apparently irreconcilable conflict of opinion on the question at hand, the weight of authority supports the general doctrine that the existence of a de jure office is a necessary condition of a de facto officer. This doctrine is sustained not only by cases which have applied it with the result of holding that the person or persons in question were not de facto officers, and that their acts could not be upheld as such, but also by cases which concede the general doctrine, but either hold that in the particular instance there was a de jure office, thus satisfying the condition, or undertake to limit and restrict the scope of the doctrine and thus take the particular case out of its operation."

Particular applications of the above stated rule are discussed in the comment above referred to and numerous authorities are cited in support of the statement of the text. It is further pointed out that, while there is considerable conflict concerning the status of an officer holding under a law subsequently declared unconstitutional, "It is uniformly held that there can be no de facto incumbent of an office not existing by virtue of any law".

Thus it follows in the instant case that, since the office of Secretary of the Louisiana State Live Stock Sanitary Board of the Louisiana State University and

Agricultural and Mechanical College is admittedly nonexistent, Dr. Flower's assumption of membership on the Milk Commission could not confer upon him any color of title to that office and his vote in favor of the resolution of date July 25th, 1941, which had the effect of removing the plaintiff as Secretary of the Commission, must be considered as illegal.

But counsel for the defendants persist that, in any event, the plaintiff is not entitled to question collaterally the validity of Dr. Flower's membership on the Commission, because he has acquiesced in Dr. Flower's participation in the Commission's meetings by not protesting his vote prior to the filing of this suit.

The answer to this proposition is obvious. If it be conceded that plaintiff should have protested Dr. Flower's vote in favor of the resolution under attack, it does not follow that he is now estopped from asserting that Dr. Flower is without color of title to the office which he has assumed. Dr. Flower is not and never has been a de facto member of the Commission for, as above pointed out, the office designated by the Legislature does not exist. Therefore, plaintiff's alleged acquiescence in Dr. Flower's participation in the Commission's meetings does not bring the case within the rule (See 46 Corpus Juris, Section 373, page 1058, and authorities there cited) that the unauthorized assumption of an office by a person without any color of title may be sufficient to constitute him an officer de facto where he has occupied the office for a considerable length of time with

the acquiescence of the public authorities and the public. Since Dr. Flower can be regarded only as an intruder, we know of no rule of law which prevents plaintiff from attacking his right to vote as a member of the Commission—and this, even though the attack be made collaterally.

Moreover, we entertain doubt that the attack in the instant case can be viewed as collateral. Dr. Flower is a party to the suit and is before the Court defending his title and, while it is true that the plaintiff is not interested in removing him from membership on the Milk Commission, he is vigorously protesting Dr. Flower's vote, which, if declared valid, would have the effect of removing plaintiff from his position of Secretary of the Commission.

The cases relied upon by the defendants, namely: Watson v. McGrath, 111 La. 1097, 36 So. 204; State v. Moreau, 153 La. 671, 96 So. 527, and State v. Hodges, 165 La. 552, 115 So. 747, are not in point for the reason that, in each of those matters, the officers under attack were found to be either de jure or de facto.

Since we hold that Dr. Flower is neither a de jure nor a de facto member of the Louisiana Milk Commission, it follows that the resolution of July 25, 1941, appointing the defendant Dyer as Secretary of the Commission was without force and effect since there were only three legal votes in favor of the resolution whereas four were necessary to constitute a majority. Hence, plaintiff has never been legally removed as the duly constituted Secretary of the Commission and he is entitled to an injunction restraining the defendants from attempting to remove him under the void resolution.

Subsequent to the hearing of this case on appeal, Dr. J. H. Musser, one of the defendants herein, resigned as President of the Louisiana State Board of Health and Ex Officio Member of the Louisiana Milk Commission. Dr. Christopher L. Mengis has been appointed as Dr. Musser's successor in office and has been substituted by appropriate motion as a party defendant in these proceedings.

For the reasons assigned, the judgment appealed from is annulled. It is now ordered that there be judgment herein in favor of the plaintiff, Wade J. Garnier, and against the defendants, Louisiana Milk Commission, T. D. Dyer, Harry D. Wilson, Dr. Christopher L. Mengis, A. G. Compton, H. G. Vernon and Dr. E. P. Flower, recognizing the plaintiff as Secretary of the Louisiana Milk Commission and entitled as such to the emoluments of office, and enjoining and restraining defendants and each of them from removing or attempting to remove the plaintiff from the office of Secretary of the Louisiana Milk Commission under the resolution dated July 25, 1941, or from seating or qualifying the defendant, T. D. Dyer, as Secretary under that resolution. All costs of this suit are to be paid by the defendants.

O'NIELL, C. J., dissents on the ground, first, that Dr. Flower was legally a member of the Louisiana Milk Commission, notwithstanding the error made in describing his official title, in that part of the statute which made him, ex officio, a member of

the commission; and, second, that Dr. Flower was at least a de facto member if not a de jure member of the commission, and had served as such, with the sanction of every member of the commission, ever since its organization, and his right to serve and to vote as a member of the commission was not contested by the plaintiff until he had filed his petition and a supplemental petition, and contested Dr. Flower's membership only in a second supplemental petition, and then only as an alternative complaint; and, third, that this suit is only a collateral attack on Dr. Flower's membership of the commission, and not a direct action to remove him from the office which he holds under color of right, but is merely a suit to annul an official act of the commission, in which Dr. Flower took part; and, fourth, that the decisions cited in the prevailing opinion, to support the statement that an officer who holds his office under an unconstitutional statute is not even a de facto officer are not appropriate, because the statute under which Dr. Flower holds office is not unconstitutional, and, even if the statute were unconstitutional, the rule which would apply is stated by this court in Watson v. McGrath, 111 La. 1097, 36 So. 204, 205, thus:

"It is well settled that an officer appointed under an unconstitutional law may be an officer de facto, and his acts as such be valid, and a protection to all parties dealing with him in his apparent legal capacity."

PONDER, J., recused.