## L. L. McGuire v. City of Dallas et al.

No. 7983. Decided April 21, 1943.
Rehearing overruled May 19, 1943.
(170 S. W., 2d Series, 723.)

*L. L. McGuire,* of Dallas, pro se. petitioner.

It was error for the Court of Civil Appeals to hold that before plaintiff could recover the minimum wage and overtime claimed by him as a city fireman, he must prove the creation of an office and the fixing of the number of firemen to be employed, by ordinance and resolution of the city council; and that Article 1583 of the Penal Code could be evaded by the failure of the city council to enact such ordinance and resolution. Dry v. Davidson, 115 S. W. (2d) 689; Hamrick v. Simpler, 95 S. W. (2d) 357; Farm & Home Saving & Loan Assn. v. Muhel, 37 S. W. (2d) 316.

*H. P. Kucera,* City Attorney, *Chas. E. Long, Jr., R. L. Dillard, Jr.,* and *A. J. Thus,* all assistants City Attorney of Dallas, for respondents.

*Fay W. Prescott,* of Fort Worth, filed brief as amicus curiae.

MR. JUDGE SLATTON delivered the opinion of the Commission of Appeals, Section B.

This suit is for overtime and minimum wages said to be due under Article 1583, Vernon's Annotated Penal Code, to a fireman in and for the City of Dallas, said city having a population of more than 75,000 inhabitants. L. L. McGuire was working for the City of Dallas as a fireman on the effective date of said amended act (April 19, 1937) and continued his services in the same capacity until July 16, 1939. The trial court rendered judgment for McGuire for the sum of $356.71. The city and McGuire were dissatisfied with the judgment. The city appealed and McGuire cross assigned error. The Dallas Court of Civil Appeals, on October 17, 1941, rendered a judgment in favor of McGuire for the sum of $1,037.88, with interest from March 19, 1940. On rehearing the opinion was withdrawn and judgment was rendered against McGuire on January 23, 1942. 159 S. W. (2d) 958. McGuire prosecuted a writ of error to this court. Sections 6 and 7 of Article 1583, Vernon's Annotated Penal Code as amended, provides:

"6. It shall be unlawful for any city of more than seventy-five thousand (75,000) inhabitants to require or permit any such firemen and policemen to work more than twelve (12) hours in any one calendar day or more than seventy-two (72)

hours in any one calendar week and, in no event, more than one hundred forty-four (144) hours in any two (2) consecutive calendar weeks in the discharge of their duties except in case of emergency which may arise where it may become necessary to work more than twelve (12) hours per calendar day or more than seventy-two (72) hours in any one calendar week or more than one hundred forty-four (144) hours in any two (2) consecutive calendar weeks for the protection of property or human life; said firemen and policemen shall draw additional compensation for the number of hours worked in addition to the regular twelve (12) hour calendar day, or more than the regular seventy-two (72) hours in any one calendar week or more than the regular one hundred forty-four (144) hours in any two (2) consecutive calendar weeks or if required to work on any day which has been designated as the day of the week that such member of said department should not be required to be on duty, additional compensation at the rate of time and one-half over time computed upon the basis of their monthly salary shall be paid to them for such additional time as they are required to work.

"7. It is further provided that in any city of more than seventy-five thousand (75,000) inhabitants that each member of any such department shall receive a sum of One Hundred Fifty ($150.00) Dollars per month as a minimum wage for said services so rendered."

∎ The City attacks the quoted statute, particularly Section 7 thereof, on constitutional grounds. This court settled that question by the refusal of the writ of error in the case of Dry v. Davidson, 115 S. W. (2d) 689, writ refused.

The major portion of the overtime sued for in this action arose in virtue of McGuire being required to serve as a fireman on the night shift during the first half of each month, during which time he was required to work 14 hours per day. This shift was designated in the record as the "B" shift and the other shift known as "A" shift, during which time he was required to work 10 hours per day. Thus McGuire was required over a semi-monthly period to work more than 12 hours per day, or 72 hours per week, or more than 144 hours in two consecutive weeks. McGuire worked from May, 1937, through March, 1939, 98 hours each week while on the semi-monthly "B" shift and the overtime involved is 26 hours per week or 52 overtime hours for each of the 23 months. McGuire worked from April, 1939, to his discharge 12 hours per day, 7 days per

week, or 24 hours overtime for two weeks on a monthly basis. In addition, McGuire was required to make inspections (four hours bi-monthly) amounting to 52 hours or a total overtime of 1360 hours.

The city contends that a fireman cannot recover for overtime work which was performed in violation of Article 1583. The statute under which McGuire claims overtime and minimum wage pay does not prohibit overtime work but the "requirement or permitting" of it by the municipality. The act by its terms provides for "additional compensation for the number of hours worked in addition to the regular twelve hours calendar day, etc.," or "if required to work on any day which has been designated as the day of the week that such member of said department should not be required to be on duty, additional compensation at the rate of time and one-half overtime computed upon the basis of their monthly salary shall be paid to them for such additional time as they are required to work."

██ A careful consideration of the quoted sections of the statute leads to the conclusion that overtime work by a fireman is not in itself prohibited. The prohibition is to the "requirement or permitting" of overtime work. A fireman who performs overtime work either in an emergency or otherwise under requirement or permission by a municipality is entitled to additional compensation at the rate of time and one-half overtime computed upon the basis of their monthly salary, which in this case is the minimum of $150.00 per month. To hold otherwise would nullify the language quoted whereby additional compensation is allowed to firemen who are required or permitted to work more than the hours and days provided in the statute. The language shows beyond question that overtime work as such is not made illegal. A municipality is penalized for the requirement or permitting of overtime work either in emergencies or otherwise. The requirement or permission of overtime work is made an offense against the city official in charge of the fire department in all cases except in an emergency. The controlling question to be decided in construing this statute is one of legislative intent. The language used in the statute is the best evidence of what was intended. It is clear therefore that the legislature by the grant of additional compensation to those who were required or permitted to work overtime hours did not intend to render the prohibited overtime work void, but rather to prevent it. The statute does not undertake to penalize the fireman but penalize the municipality by the exaction of time and one-half for overtime for the overtime hours required or per-

mitted. The penal offense provided by the statute is applicable to "the city officials having charge of the fire department * * *" and not to the municipality or fireman. This court, in the case of American National Insurance Company v. Tabor, 111 Texas 155, 230 S. W. 397, said:

"The statute does not denounce as void any policy which violates its terms. The expressly declared consequences of infractions of the statute appear to be ample to secure its obedient observance. The Supreme Court of the United States was of the opinion that where this was true, it was the reasonable implication that the Legislature meant for only the statutory remedies to be applied, and did not mean for courts to refuse to enforce contracts, which were not declared void or unenforceable, though in contravention of the statute. Harris v. Runnels, 12 How. 41, 13 L. Ed. 901.

"The language of the statute shows that the Legislature did not regard the insured and the insurer as in *pari delicto* in making the contracts sought to be prevented. The insurer and the insurer's agents are alone to be punished, and are alone expressly subjected to forfeiture. The command to refrain from the discriminatory acts is addressed to the insurance companies alone.

"We sanction the declaration of Judge Selden, quoted with approval in a recent opinion of the New York Court of Appeals, that 'it is safe to assume that whenever the statute imposes a penalty upon one party, and none upon the other, they are not to be regarded as *par delictum*'."

The City of Dallas relies upon the following authorities from other jurisdictions: Lewis v. Ferrari 34 Cal. App., 2d Sup. 767, 90 Pac. (2) 384; City of Glendale v. Dixon, 51 Ariz. 86, 206, 75 Pac. (2d) 42, 683; Robinson v. City of Perry, 35 Okla. 475, 130 Pac. 276; Burns v. City of New York, 121 App. Div. 180, 105 N. Y. Supp. 605. These authorities construe wage and hour laws of the particular state involved and the statute differ from the Texas statutes in this: (1) overtime is prohibited to employer and employee alike and the overtime is declared to be illegal; (2) overtime employment is limited to an emergency. These authorities are in line with the Lusk case, (Montgomery Ward & Co. v. Lusk) 52 S. W. (2d) 1110, (writ refused). The holdings made in such cases are not applicable to the statute in review for the reasons above stated. The distinction to be made in these cases is clearly recognized by the use of the

following language contained in the opinion of the court in the Lusk case, supra, as follows:

"Such statutory protection cannot be waived by a single member of society. To permit individuals to enter into contracts to violate the law and then invoke the aid of the courts to secure the benefits thereof would be to encourage the doing of the very thing the law prohibits. That the law intended to prohibit such contracts is made clear by the act. The prohibition is directed, not against particular individuals, but against a particular thing, namely, the employment of females for more than 9 hours per day. It provides that 'no female shall be employed,' etc. It is the employment that is forbidden. It provides for a recurring penalty for each violation, and thus evidences legislative intent to prohibit the doing of the thing denounced. A contract made in violation of the statute is contrary to public policy, and cannot be enforced by either party."

■ The city contends through several propositions that McGuire cannot recover in this suit because the proof failed to show him to be a fireman de jure during the time involved. The trial pleadings of McGuire were not challenged in the Court of Civil Appeals and are not challenged here with respect to a deficiency in the allegations that he was a fireman de jure in and for the City of Dallas between April 17, 1937, and July 16, 1939. The lack of proof is the sole complaint. All of the witnesses testified without objection that McGuire worked as a fireman for the City of Dallas from December 1, 1936, through July 16, 1939. The officials in charge of the records of the City of Dallas testified that McGuire was paid the sum of $72.50, less 2%, semimonthly during the period. McGuire introduced in evidence various sections of the charter of the City of Dallas relating to the fire department and the rules appertaining thereto and offered the budgets of the City of Dallas. Thereupon the following occurred:

"The Court: * * * The proposition is this, the only question in this case is whether or not the City of Dallas owes you any money, and what's the use of all that matter you are trying to put in now? You were on the Fire Department, your captain testified you were on the Fire Department, and the city don't deny that. Now, the only question in this case is whether or not you are entitled to your pay for that time.

"McGuire: I agree with the court, but the city is raising the question of whether the council provided for the plaintiff's employment, and to show that the plaintiff has to go back through

all these records and show it. If the city attorney will admit that the council provided for the plaintiff's employment, all this won't be put in.

"Counsel for the city: I am agreeing to everything the record shows. It provides in the budget of 1933, 34 and 35 for the payment of all privates, and he has proved that he was a private and that is as far as I ought to be asked to agree.

"The court: Then the question gets down to the fact of whether or not he is entitled to this pay that he is asking for and that's all there is to it.

"McGuire: To save the court's time, we introduce each budget and ask all these questions, and can the plaintiff have a bill of exception embodying the fire department section on every budget from 1933 to 1939?

"The court: He has already admitted it.

"Counsel for the city: I admitted the 1937, 1938 and 1939, the years he was employed.

\*      \*      \*      \*

"McGuire: I was employed in 1933 through 1939.

"Counsel for the city: You are not suing for anything but since 1937?

"The court: I would not let you have a bill for anything back of what you are suing for, you can have a bill for the years 1937, 1938 and 1939, but there is no use in going into all the others because there is no question about that.

"McGuire: Except the point is that I want to show the plaintiff was legally appointed.

"Counsel for the city: If it would show it for one year, it would show it for any other year.

"McGuire: If the city attorney will admit that the budget made provision for his employment through those years, that's all he wants.

"The court: He admits the budget shows there were so many men in the fire department and you are one of them. What else

do you want? It has been testified that you were in the fire department and the budget shows so many men. What more could the books show or anything show?

"McGuire: Nothing if the city attorney agrees to that.

"Counsel for the city: I agree that the budget shows that there was so much allocated for paying the firemen in those years."

These facts and admissions are sufficient to prove that McGuire was a fireman de jure in and for the City of Dallas during the time in suit within the purview of Article 1583 above quoted. To hold otherwise would require us to say that the city officials of Dallas acted unlawfully in the appointment, retention and payment of McGuire as a fireman. The rule is that public officials are presumed to have rightly performed their duties. Anderson v. Polk, 117 Texas 73, 297 S. W. 219. This presumption is one of fact, and continues until the contrary appears in the evidence. This holding does not conflict with the following cases relied on by the City of Dallas: City of Dallas v. McDonald, 130 Texas 299, 103 S. W. (2d) 725; Holcombe v. Grota, 129 Texas 100, 102 S. W. (2d) 1041, 110 A. L. R. 234, and McGuire v. City of Dallas, 151 S. W. (2d) 617. These cases are *mandamus proceedings* in which great particularity is required, both in the pleadings and the proof. Wortham v. Walker, 133 Texas 255, 128 S. W. (2d) 1138, loc. cit. 1151. In these cases the relators were seeking to recover an office or position as well as compensation due because of a wrongful discharge. In such actions it is necessary to show the existence under the law of the office or position. Neither is the holding in conflict with the case of City of San Antonio v. Coultress, 169 S. W. 917, error dismissed, mandamus to compel certification of questions refused, 108 Texas 150, 179 S. W. 515, 187 S. W. 194. In the Coultress case it appeared in the evidence without dispute that the council of the City of San Antonio had not by *ordinance* created the number of patrolmen to be employed by the city. Moreover, it affirmatively appeared in the evidence that said council had attempted to create the number of patrolmen through a resolution which was in conflict with the appropriate provisions of the charter. In the present case, as we have seen, the facts and admissions show McGuire to be a fireman and there is no proof to the contrary.

■ The city contended in the lower courts, and makes the same contention here, that a fireman cannot recover for overtime work in violation of Article 1583 without showing that the over-

time was performed in an emergency. Our construction of the statute shows the contention to be untenable. The emergency provision of the statute is applicable to the penal offense, that is, it is not unlawful for "the city official having charge of the department" to require or permit overtime work in case of emergency.

■ The city contends that McGuire waived his right to recover additional compensation and is estopped to do so because of his acceptance without protest of the amounts paid him semi-monthly by the city. It is now well settled that an officer or employee of a municipality whose compensation has been fixed by law cannot agree to accept a lesser sum than the salary or wages provided by law. Morrison v. City of Fort Worth, 138 Texas 10, 155 S. W. (2d) 908.

■ The city insists that McGuire has been paid more than the minimum wages required by the statute, and hence cannot recover additional compensation. This contention is advanced upon the following facts: McGuire was paid semi-monthly $72.50, less 2% which he contributed to the pension fund. The city contributed for his benefit the sum of $14.50 each month to the pension fund and gave him a clothing allowance of $25.00 per year in cash. It may be conceded that if the contributions made by the city to the pension fund, together with the clothing allowance of $25.00 per year in cash, may be taken into consideration in calculating the wages of McGuire, said sums, together with the semi-monthly payments, are more than the minimum wage provided by the statute. There is no relation between the pension law and Article 1583. They are separate and independent legislative enactments. A comprehensive pension system for incorporated cities and towns has been authorized by statute. Article 6229-6243; 6243a as amended, 44th Legislature. The constitutionality of the act was sustained by this court in the case of Byrd v. City of Dallas et al, 118 Texas 28, 6 S. W. (2d) 738, upon the theory that contributions made by the municipality and the employee to the pension fund were a part of the agreed compensation, hence, not a grant of public funds to private purposes, etc., as prohibited by our State constitution.

The amended act was before this court in the case of City Dallas v. Trammel, 129 Texas 150, 101 S. W. (2d) 1009, 112 A. L. R. 997. The Trammel case involved the question as stated by the court as follows: "Does the employee, after retirement, have a vested right to participate in the pension fund to the extent of the full amount of the monthly installments granted him at retirement?" The question was answered in the negative on

the theory that "It is well settled that the mere circumstances that a part of a pension fund is made up by deductions from the agreed compensation of employees does not in itself give the pensioner a vested right in the fund and does not make it any less a public fund subject to control of the legislature." (Citing authorities.)

It is clear therefore that contributions made by the municipality and the employee to the pension fund are a part of the agreed compensation between the parties and that the contribution made by the municipality is not a grant of public funds to private purposes, etc., as inhibited by the State constitution. Still the pension fund is none the less a public fund subject to the control of the legislature. Since the pension fund is a public fund subject to the control of the legislature we are of the opinion that firemen have the right to participate in a pension fund in case they desire to do so, and that such right is in addition to the rights given under the overtime and minimum wage law. Article 1583, P. C. It follows that the contributions made by the City of Dallas for the benefit of McGuire should not be considered as a part of the minimum wage required by the statute in review. The clothing allowance of $25.00 per year, we think, must be considered as a part of the compensation. This is necessary in order for the payment to be legal. We are not cognizant of any law which would authorize a city like Dallas to make the cash payment other than as a part of the compensation to be paid to the fireman.

■ There was no issue to be submitted to the jury with respect to the number of overtime hours which McGuire was required to work. McGuire testified to the number of hours worked on each day during the time involved. He was corroborated by his superiors, who were employees of the City of Dallas. McGuire testified that the public records of the city showed the number of hours he was required to be on duty. The city made no attempt to contradict or discredit the testimony of McGuire. The general rule is that evidence given by an interested witness, even though uncontradicted, presents an issue to be determined by the jury. Mills v. Mills, 228 S. W. 919, 111 Texas 265, 231 S. W. 697. But this rule is not without exception. Where the testimony of an interested witness is uncontradicted, is clear and positive, and there are no circumstances in evidence tending to discredit or impeach such testimony, conclusive effect may be given thereto. Trinity Gravel Co. v. Cranke, 282 S. W. 798, loc. cit. 801; American Surety Co. v. Whitehead, 45 S. W. (2d) 958, loc. cit. 961. The applicable rule is further strengthened

where the testimony of the interested witness is, as in this case, corroborated by other witnesses and the opposite party had the means and opportunity of disproving the testimony, if it were not true, and failed to do so. Simonds v. Stanolind Oil & Gas Co., 134 Texas 332, 350, 114 S. W. (2d) 226, 136 S. W. (2d) 207. The evidence shows without dispute that McGuire worked 1360 hours overtime, for which he is entitled to recover under the statutory rate of time and a half computed upon the basis of the monthly salary, in this case $150.00, the rate being 48 cents per hour and the overtime rate at time and a half is 72 cents per hour. McGuire was paid $145.00 per month, plus $2.08 per month (clothing allowance). Thus the city owes McGuire $2.92 per month for the 27 months, which is $78.74, and the overtime hours amounting to $979.20, aggregating the sum of $1,058.04, with interest at the rate of 6% from the date of the judgment of the trial court, towit, March 12, 1940.

McGuire cross assigned errors in the Court of Civil Appeals to the judgment rendered in his favor in the trial court. The Court of Civil Appeals should have sustained in part his cross assigned errors. It is our duty to render the judgment here that should have been rendered by the Court of Civil Appeals. Accordingly, the judgment of the Court of Civil Appeals is reversed, the judgment rendered by the trial court is reformed as above indicated, and as reformed is affirmed.

Opinion adopted by the Supreme Court April 21, 1943.

Rehearing overruled May 19, 1943.