157 So.2d 340 (1963)
Israel LaFLEUR, Plaintiff-Appellee,
v.
Alfred E. ROBERTS, as Mayor, etc., et al., Defendants-Appellants.
No. 942.
Court of Appeal of Louisiana, Third Circuit.
October 30, 1963.
*341 George W. Liskow, Warren Hood and Charles Ware, Lake Charles, for defendants-appellants.
Bryan Miller, Lake Charles, for plaintiff-appellee.
Before TATE, FRUGÉ and SAVOY, JJ.
TATE, Judge.
Based upon certain allegedly illegal administrative acts, this suit seeks injunctive and other relief. The plaintiff brings suit as a Councilman and taxpayer of the City of Lake Charles. Made defendant is the Mayor and the City.
The trial court rendered judgment in accordance with one of the demands of the plaintiff's petition. Accordingly, the defendants were enjoined to dismiss the city's Director of Public Works, since his appointment of July 1, 1961 as Director was held to be invalid.
The defendants appeal from this adverse judgment. The plaintiff answers and requests certain additional relief.
The principal issue of this appeal concerns the validity of the appointment of July 1, 1961 by the defendant mayor of Francis E. Battaglini as the city's Director of Public Works.
*342 Did the Director of Public Works possess the charter-required experiential qualifications at the time of his appointment?

I
A brief résumé of background is necessary to set this legal issue in its context.
The present Lake Charles City Charter was adopted by vote of the electors of that municipality in 1960, pursuant to the homerule provisions of LSA-R.S. 33:1381-33:1390, as authorized by Article XIV, Section 40, of the LSA-Constitution. In general, the charter provides that legislative and policy-making authority is entrusted to a City Council consisting of seven members, while executive and administrative authority is entrusted to the Mayor.
The present mayor and city council assumed office on July 1, 1961, as the first administration under the new charter. The present suit is to determine the effect of a charter provision specifying that an administrative officer appointed by the mayor to serve at his pleasure shall have certain experiential qualifications at the time of his appointment.
The charter provides for the creation of certain administrative officers in charge of administering specified branches of the city government. These include, for instance, the Director of Finance, the Director of Community Services, the Fire Chief, the Police Chief, the City Attorney, and (here in question) the Director of Public Works. Generally speaking, the mayor is given the power to appoint these administrative officials, subject in some instances to the approval of the city counsel (the Finance Director, the City Attorney) or to other requirements of existing law (the Fire Chief, the Police Chief).
In the case of the Director of Public Works, the mayor appoints this official to serve at his pleasure, and the approval of the city counsel is not required. Section 4-12 of the city charter. However, the charter also specifically provides that: "The Director of Public Works shall have had at the time of his appointment at least five years experience in a responsible managerial or administrative position." (Italics ours.)

II.
Specifically, the principal issue of this appeal concerns whether the defendant mayor's appointment of July 1, 1961 of Mr. Battaglini as Director of Public Works is invalid because this appointee did not possess at the time of his appointment the minimum experiential requirements prescribed by the city charter of "at least five years experience in a responsible managerial or administrative position."
In determining what was intended by this experiential prerequisite to the appointment, it is proper to take into consideration, as the trial court did, the charter-prescribed responsibilities of the Director of Public Works. These are set forth as follows by Section 4-13:
"The Director of Public Works shall direct and be responsible for engineering services for all agencies of the City; contract construction supervision; the maintenance of city property; maintenance of the city map and mapping and survey work; construction of streets, sidewalks and bridges and street drainage connected therewith; traffic engineering; garbage and trash collection and disposal; street cleaning; weed and grass control; the storm water collection and disposal system; inspections and licensing in conjunction with the enforcement of zoning ordinances and building and other construction codes; and licensing of trades."
The record shows that the Department of Public Works, of which the Director is administrative head, had a budget allotment of over a half million dollars during the 1961-1962 fiscal year, a little over one-third of the city's total budget.
Citing legal and dictionary definitions of the terms involved (Webster's New International Dictionary, 3rd ed., 1961; 2 C.J.S. verbo administrative p. 56; Black's Law *343 Dictionary, 4th ed., 1951; cf., Saint v. Allen, 169 La. 1046, 126 So. 548), our trial brother correctly concluded:
"Consequently, it is clear to this Court that when the framers of the city charter used the words `A responsible managerial or administrative position' in defining the qualifications of the Director of Public Works, whose duties would be to direct and superintend the engineering services and other services of the city and the employees involved therein, they had in mind a person whose administrative experience included the superintending, direction or control of a phase of a business or of a branch of a business [or a government] itself, or one under which there would be one or more employees."

III.
Restating the general issue, did Mr. Battaglini at the time of his appointment on July 1, 1961, possess "five years experience in a responsible managerial or administrative position"?
The record shows that Mr. Battaglini was twenty-seven years of age at the time of his appointment; and that, after college, he worked first for seventeen months as a shipping clerk at a shipping dock at Borden's, then for six months as a life insurance salesman, and then for three and one-half years as Executive Secretary of the Better Business Bureau of Southwest Louisiana.
Thus, at the time of his appointment, Mr. Battaglini had a total employment experience of five years and five months. Further, so far as the record shows, Mr. Battaglini is an able young man and otherwise qualified to fill the position as Director, if he possessed at the time of his appointment the experiential prerequisite specified by the city charter.
The appellees strenuously urge, however, that, at the very least, the said Director's pre-appointment work experience as a life insurance salesman (six months) and as a shipping clerk (seventeen months) cannot reasonably be considered as experience in "responsible managerial or administrative" positions, within the meaning of the city charter.
If the work experience in either of these positions is excluded, it follows that the Director did not at the time of his appointment possess the minimum experiential qualifications required by the city charter for his appointment.

IV.
The issue is not, however, simply whether in the courts' opinion the work-experience as life insurance salesman and shipping clerk can be characterized as responsible managerial or administrative work.
The mayor, not the courts, is constitutionally entrusted with the responsibility of administering the affairs of the City of Lake Charles. In the performance of such responsibility, the mayor is and must be accorded a large discretion, which it is always presumed has been exercised by him legally and validly unless the contrary be shown. The courts cannot and should not interfere with the mayor's exercise of his administrative discretion, in the absence of a clear showing of illegality or abuse of discretion.
See, e. g.: 3 McQuillin on Municipal Corporations (3rd ed., 1949), Section 12.70, p. 273; 62 C.J.S. Municipal Corporations § 542, p. 995; 43 Am.Jur. "Public Officers", Section 255, p. 72.
On the other hand, charter provisions limiting or qualifying the authority of municipal officials cannot be disregarded as if not written. In a constitutional form of government based upon the rule of law, public officials like all other citizens, must obey the law. As the trial court noted: "Now, certainly, this Court is reluctant to interfere with the actions of any public official or public body. Nevertheless, there must be a judicial review of actions of such public officials and public bodies when they are called in question as exceeding their authority or being arbitrary or otherwise violating the provisions *344 of established charters, codes, laws or constitutions." See, e. g., Dickson v. Hardy, La.App. 2 Cir., 144 So. 519, and 177 La. 447, 148 So. 674. "In the exercise of his powers, he [the mayor] is subject, of course, to judicial supervision." 3 McQuillin, cited above, Section 12.43 at pp. 198-199.
(Insofar as counsel contend that the mayor's administrative determination must be upheld by the courts if there is any evidence whatsoever to support it, no legal authority is cited which supports this contention. The decisions relied upon by the appellants concern instances where, unlike the present situation, judicial review of certain administrative determinations is so limited by specific statutory provision. See, e. g., Vandike v. Brown, La.App. 3 Cir., 139 So.2d 803 and Wilson v. Brown, La. App. 2 Cir., 147 So.2d 27.)

V.
In applying these general principles to the present case, the appellants contend that the plaintiff did not bear his burden of clearly showing that the defendant mayor's action constituted an abuse of his discretionary power of appointment, and that the trial court thus erred in so holding because it based its opinion on certain assumptions which are not shown by the record.
The defendant mayor testified that he was aware of the charter requirements, that he had investigated Director Battaglini's employment experience, and that, in the mayor's judgment, this constituted five years' responsible administrative experience.
Able counsel for the appellants contend that the strong presumption that the mayor validly exercised his discretionary right of appointment in this instance, is not overcome by the sparse testimony, elicited on an examination of Battaglini himself, that in his previous experience as a "life insurance salesman" he had no employees working under him, and as a "shipping clerk", while he did not himself hire employees, nevertheless he had some employees working under him.
That is, counsel for the appellants contend that the simple testimony that Battaglini was a "life insurance salesman" and a "shipping clerk" does not by itself suffice to satisfy the burden upon the plaintiff to show clearly that such positions were not "responsible managerial and administrative" positions within the meaning of the charter. Counsel thus suggest that the trial court simply assumed the non-managerial natures of the duties of these positions, without any evidence being introduced to show clearly that this was so.
We are unable to agree with this contention. As the trial court noted, the plaintiff is required to prove his case only by a preponderance of the evidence, not (as in criminal cases) to prove it beyond a reasonable doubt.
A life insurance salesman, in the ordinary meaning of the term, is simply one who sells life insurance to others, cf., Webster's New International Dictionary (3rd ed., 1961), verbo "salesman", p. 2003; and such an occupation, especially when as here the salesman works by himself and has no employees to supervise, is simply not "managerial or administrative" within the accepted meanings of the term, as summarized in the quotation above from the trial court's opinion.
Likewise, a shipping clerk is "One who is employed in a shipping room to assemble, pack, and send out or receive goods." Webster's, cited above, verbo "shipping clerk", p. 2098. Although a shipping clerk may have several employees working under him, work in such an occupation does not, within the meaning of ordinary language, constitute work in a "responsible managerial or administrative position" within the charter intention of experience qualifying a person to administer a city department with many responsibilities and employees.
Language is the method by which a concept or fact is communicated from one *345 human being to another. A single word may be the shorthand symbol for a whole complex of facts, such is the efficiency of language and its usage by the human race.
When we say an object is "red", for instance, we immediately understand the general color of the object referred to, and that the object is not "blue" or "yellow". We need not in each instance explain that what we refer to is "any of the colors normally seen when the portion of the physical spectrum of the longest wave lengths capable of evoking visual sensation is employed as a stimulus", Webster's New International Dictionary (2d ed., 1960), verbo "red", pp. 2083-4.
Similarly, when a man's occupation is described as "life insurance salesman" or "shipping clerk", such terms convey a definite meaning as to the general nature of the work, without necessarily requiring testimony to flesh the concept expressed by the terms, by a detailed description of the particular duties involved. The general nature of the work expressed by the terms so utilized clearly shows that, within the ordinary meaning of language, the occupations so described are not "responsible managerial or administrative" positions within the intention of the charter provision.
We therefore affirm the determination of the trial court that the plaintiff has borne the burden of proving that Mr. Battaglini did not possess the charter-required experiential qualifications at the time of his appointment of July 1, 1961 as Director of Public Works; and that, therefore, such appointment of July 1, 1961 was invalid.

Other issues.

VI.
Alternatively, the appellants also contend that this suit is now moot. It is contended that the injunctive removal of Battaglini as Director of Public Works is no longer justified, even if the court holds that he did not possess the minimum managerial and administrative experience required by the charter at the time he was appointed on July 1, 1961.
The basis of this argument is the suggestion of appellants that, in addition to the 3½ years of experience as Executive Secretary of the Better Business Bureau he possessed when appointed city Director on July 1, 1961, Mr. Battaglini now has acquired (as of January, 1963, after suit was filed) the required five years of experience, if we also take into consideration the managerial and administrative experience he has acquired as city Director since his appointment on July 1, 1961.
This is a forceful contention.
However, we have concluded that the trial court correctly overruled the appellants' motion that the present suit is moot, which was filed in May, 1963 on the date of the trial below. In overruling the contention of mootness, our learned trial brother concluded: "It is clear, of course, that Section 4-12 requires that he have had five years' experience in a responsible managerial or administrative position at the time of his appointment. He is presently serving under an appointment that began on July 1, 1961, and as a result, insofar as this suit is concerned, any time he has spent in that office since his appointment cannot be considered."
This court, of course, is not called upon to decide, nor do we state any opinion as to, the question which may be presented, should there be a subsequent appointment as Director, based upon including within the five years prerequisite managerial experience such official's service under the appointment of July 1, 1961.

VII.
Finally, the defendants-appellants contend that, at any rate, they are entitled to attorney's fees under LSA-R.S. 42:261, subd. D. This enactment provides that *346 a party shall be liable to a public official for the latter's attorney's fees in a suit against the latter, should the plaintiff "be unsuccessful in his demands." (Italics ours.)
The defendants-appellants base their claim upon their contention that the plaintiff was successful only in his demand for injunctive relief in the matter of the invalid appointment of the Director of Public Works, but was unsuccessful in or abandoned certain other demands in his petition.
The statute in question does not provide that a private person suing a public official shall be liable for the official's attorney's fees if the private person is successful in only part of his demandsit states that such private person is so liable only if he "be unsuccessful in his demands" (in the plural). We interpret the statute to mean that the plaintiff is liable only if his suit is completely dismissed.
Finding that the defendant mayor is entitled to no attorney's fees under this statutory provision, it is unnecessary for us to consider the strong contention made by the plaintiff-appellee by answer to the appeal to the effect that such provision is unconstitutional for various reasons.

VIII.
By his answer to the appeal, the plaintiff-appellee further requests that there be judgment in favor of the City of Lake Charles and against the defendant Mayor individually, in the full sum paid as salary to Director Battaglini during the period of his invalid appointment as Director of Public Works.
No authority is cited for the proposition that the mayor should be liable individually for a monied sum, where the municipality has suffered no pecuniary damage thereby, just because an act done by him within the general scope of his discretionary power, is held upon judicial review to be invalid. It should be pointed out also that, so far as the record shows, the mayor attempted to exercise his discretionary appointment powers under the new charter in good faith, and there is no allegation to the contrary.
We affirm the action of the trial court in refusing to hold the defendant mayor individually liable under the circumstances.

Decree.
For the reasons assigned, the judgment of the trial court is affirmed.
Affirmed.