614 So.2d 270 (1993)
STATE of Louisiana,
v.
Sammy DAVIS, Jr.
No. CR 92-355.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1993.
*271 Dennis Weber, Baton Rouge, for defendant.
John Johnson, Dist. Atty., Harrisonburg, for plaintiff.
Before DOMENGEAUX, C.J., and DOUCET and DECUIR, JJ.
DOMENGEAUX, Chief Judge.
Defendant, Sammy Davis, Jr., was charged by indictment with three counts of malfeasance in office, a violation of La.R.S. 14:134, and one count of injuring public records, a violation of La.R.S. 14:132. After a jury trial on May 16, 1991, defendant was found guilty on one count of malfeasance in office. He was sentenced to four years at hard labor, with two years suspended, and placed on active supervised probation for five years. Additionally, defendant was fined $3,000 plus costs and was ordered to pay restitution in the amount of $15,000.
Although defendant assigns three errors, he has only briefed two. Under Uniform RulesCourts of Appeal, Rule 2-12.4, those errors not briefed are considered abandoned.

*272 FACTS
Defendant served as mayor of Ferriday, Louisiana from July 1, 1984 through June 30, 1988. Among the duly enacted ordinances of the Town of Ferriday in effect at that time was Ordinance 13:6 which provided that town employees could receive no more than 10 days (80 hours) of pay upon retirement for accrued leave, and Ordinance 13:7, which prohibited the payment of accrued sick leave to employees who resign or retire or who are dismissed from employment.
On his last day in office, defendant signed checks issued to himself and other town employees for accrued annual leave and sick leave in violation of the ordinances. Defendant claims that the board of aldermen authorized him to pay the employees annual leave and sick leave at an executive session of the town council on February 10, 1987. Defendant testified that the board of aldermen agreed to pay a long time employee, J.Q. Rials, for 360 hours of accrued annual and sick leave upon his retirement. Defendant further testified that all board members agreed that if they did this for Mr. Rials, they would have to do it for every employee.
The record contains conflicting testimony as to what transpired at the executive session of the board of aldermen on February 10, 1987. However, defendant testified that he was aware that no official action could be taken in executive session. Furthermore, the defendant announced after the meeting:
That five-minute executive session that we went into had to do with personnel, a personnel matter that involved pay, vacation pay, and/or sick leave to employees that either has been terminated and/or laid off, and we're going to review the policy, review the manual as to whether or not that is, in fact, something that we can do.
On July 1, 1988, Glen McGlothin succeeded the defendant as mayor. Upon learning that the town employees who had been dismissed were receiving their paychecks as well as additional benefits, Mr. McGlothin notified the proper authorities. On May 15, 1990, defendant was indicted by the grand jury for three counts of malfeasance in office and one count of injuring public records.

ASSIGNMENT OF ERROR NO. 1
Defendant contends that the conviction of malfeasance in office was unconstitutionally obtained in that after reviewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the defendant guilty beyond a reasonable doubt.
When the issue of sufficiency of the evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983).
La.R.S. 14:134 provides, in pertinent part:
Malfeasance in office is committed when any public officer or public employee shall:
(1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee, or
(2) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.
Any duty lawfully required of a public officer or public employee when delegated by him to a public officer or public employee shall be deemed to be a lawful duty of such public officer or employee. The delegation of such lawful duty shall not relieve the public officer or employee of his lawful duty.
*273 Before a public officer or employee can be convicted of malfeasance in office under La.R.S. 14:134, there must be a statute or a provision of law which delineates an affirmative duty upon the officer or employee. State v. Perez, 464 So.2d 737 (La.1985). The duty must be expressly imposed by law upon the officer or employee because he is entitled to know exactly what conduct is expected of him in his official capacity and what conduct will subject him to criminal charges.
First defendant argues that the violation of a municipal ordinance is not a crime as defined in Title 14 of the Criminal Code. Defendant is correct in his assertion that violation of a municipal ordinance is not a crime. State v. Ramos, 390 So.2d 1262 (La.1980). However, defendant was charged with the crime of malfeasance in office and not with the violation of the municipal ordinances. Under La.R.S. 14:134, the State need only prove that the defendant "intentionally performed such duty (lawfully required of him) in an unlawful manner."
La.R.S. 33:404 sets forth the duties of a mayor, in pertinent part, as follows:
A. The mayor shall have the following powers, duties, and responsibilities:
(1) To supervise and direct the administration and operation of all municipal departments, offices, and agencies, other than a police department with an elected chief of police, in conformity with the ordinances adopted by the board of aldermen and with applicable provisions of state law. All administrative staff shall be subordinate to the mayor.
La.R.S. 33:404 imposes a duty on all mayors to administer in conformity with the ordinances adopted by the board of aldermen. This is an affirmative duty, a violation of which can constitute the crime of malfeasance in office under La.R.S. 14:134. Defendant's first argument in this assignment has no merit.
Defendant's second argument in this assignment is that the State failed to prove beyond a reasonable doubt that he possessed the general criminal intent required by La.R.S. 14:134.
Defendant concedes that he did not specifically seek board approval to pay accrued benefits to himself and other employees. However, defendant claims that the board of aldermen granted him the authority to pay accrued benefits to town employees at the executive session on February 10, 1987, at which time town ordinances 13:6 and 13:7 were informally amended.
No minutes were taken of the proceedings during the five minute executive session, and the testimony conflicts as to what happened during this meeting. The defendant and five members of the board of aldermen were present. O'Deal Montgomery, a member of the board, testified that all board members agreed that all employees should be treated the same way J.Q. Rials was being treated; therefore, all employees should receive their accrued benefits. Mrs. Montgomery further testified that the board did not authorize the mayor to pay Mr. Rials more than that authorized by law, nor did the board vote to change the ordinances.
Board member Elijah Calhoun testified that the board agreed during the executive session to pay accrued benefits to Mr. Rials and also decided "that everybody in the future ought to be treated equally." However, the minutes of the regular meeting of the board show that Mr. Calhoun was absent on February 10, 1987.
Board member Clarence Hyman testified that the ordinances were never amended, but he did recall that the board agreed to pay Mr. Rials "some money for sick leave and other things." Mr. Hyman did not recall anyone suggesting that if they did this for Mr. Rials, they should do it for other employees in the future. Board member William Rucker testified that the ordinances were never amended, and he did not recall the board ever approving sick leave and/or annual leave payments to Mr. Rials. Tom Lowrey did not recall that executive session; however, he stated the board does not vote in executive session, it only discusses matters. Further, he stated *274 if the board voted to pay annual leave, the vote would be reflected in the minutes.
Although there is conflicting testimony about the executive session, the trial transcript reveals that defendant knew that no official action could be taken in executive session. Further, defendant's own remarks that were made immediately after the executive session indicated that no official action was taken at that meeting. Looking at the totality of the evidence, a reasonable trier of fact could find that the defendant knew that the payment of accrued annual leave and sick leave was in violation of the ordinances of the Town of Ferriday.
Assignment of error no. 1 has no merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, defendant claims that the indictment was fatally defective because it did not contain the formal conclusion "... contrary to the law of the State of Louisiana and against the peace and dignity of the same," because it was not dated, and because the grand jury foreman did not sign the amended indictment.
The initial indictment did not contain the formal conclusion, "... contrary to the law of the State of Louisiana and against the peace and dignity of the same." By written motion, on June 13, 1990, the State moved to amend the indictment to include this language; the trial court permitted the amendment. Defendant argues that, because the formal conclusion has been held to be "sacramental" by the Supreme Court of Louisiana, an indictment which fails to contain these words is fatally defective and may not be cured by amendment.
Article VII, § 1 of the Louisiana Constitution of 1921 did require the formal conclusion as cited by the defendant. However, the requirement was not repeated in the Constitution of 1974. The comments to La.C.Cr.P. art. 462, which were written before the Constitution of 1974, state in pertinent part:
The common law indictment concluded with the words: "against the peace of Our Lord the King, and his crown and dignity." However, according to I Stephen, History of the Criminal Law of England 275, 282, 283 (1883), a formal conclusion is no longer required in England. Sec. 150 of the A.L.I. Code of Criminal Procedure specifically states that no formal conclusion is required. Neither a formal commencement nor a formal conclusion is required by Fed. Rule 7(c). The mandatory formal conclusion serves no substantial purpose, but its elimination would require a constitutional amendment. Such an amendment was not proposed since the Law Institute took the position that recommendations of constitutional amendments should be limited to matters of substantial concern. The formal conclusion requirement is easily complied with and is included on printed indictment forms. Also, noncompliance is a formal defect which is waived if not raised at the arraignment by a motion to quash. If it is seasonably raised, the defect may be cured by amendment. See Art. 532(2). (Emphasis added.)
La.C.Cr.P. art. 462 provides that the indictment by a grand jury may be in substantially the form which includes the "sacramental language." If the words of the formal conclusion are, indeed, still required, then it seems clear that their exclusion is merely a defect of form. La.C.Cr.P. art. 487 provides in part:
A. An indictment that charges an offense in accordance with the provisions of this Title shall not be invalid or insufficient because of any defect or imperfection in, or omission of, any matter of form only, or because of any miswriting, misspelling, or improper English, or because of the use of any sign, symbol, figure, or abbreviation, or because any similar defect, imperfection, omission, or uncertainty exists therein. The court may at any time cause the indictment to be amended in respect to any such formal defect, imperfection, omission, or uncertainty. (Emphasis added.)
Before the trial begins the court may order an indictment amended with respect to a defect of substance. After the *275 trial begins a mistrial shall be ordered on the ground of a defect of substance.
The omission of the "sacramental language," if a defect at all, was one of form only and was cured by amendment prior to trial. Furthermore, La.C.Cr.P. arts. 535(C) and 521 require that a motion to quash a defective indictment be filed within 15 days after arraignment. In the present case, the defendant was arraigned on June 13, 1990, but the motion to quash was not filed until March 25, 1991. For the foregoing reasons, this argument lacks merit.
The defendant next argues that the indictment is defective because it was not dated as required by La.C.Cr.P. art. 462. In State v. Sepulvado, 342 So.2d 630 (La. 1977), the court held that an indictment was not defective for failing to disclose the date of commencement of prosecution since this was the same date as the filing date shown on the indictment returned by the grand jury. In the present case, the original indictment was filed on May 16, 1990, and the amended indictment was filed on June 13, 1990. The filing dates were noted on both indictments. We find no merit to this argument.
The defendant also argues that the amended indictment is defective because it was not signed by the grand jury foreman. Defendant cites several cases, all of which deal with original indictments. The State directs our attention to State v. Guin, 444 So.2d 625 (La.App. 3d Cir.1983), where on an oral motion to amend an indictment, the amending notation was made on the original indictment over the foreperson's signature. In the instant case, we find that a written motion to amend the indictment to include a formal conclusion, which includes a copy of the indictment as amended, is sufficient without the signature of the grand jury foreman. Furthermore, the district attorney has the authority to amend indictments, both as to form and substance. La.C.Cr.P. art. 487; State v. Jones, 544 So.2d 1209 (La.App. 3d Cir.1989). We find no requirement which would mandate the signature of the grand jury foreperson on an amendment of this nature. This argument lacks merit.
Defendant also argues, in the alternative, that the trial court erred in denying him the right to a preliminary examination. Defendant has failed to brief this issue, and it is considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4. Further, any error in denying a preliminary examination is rendered moot after trial and conviction, in the absence of prejudice. State v. Washington, 363 So.2d 509 (La.1978); State v. Mayberry, 457 So.2d 880 (La.App. 3d Cir.1984), writ denied, 462 So.2d 191 (La.1984).
Assignment of error no. 2 has no merit.

ERROR PATENT
The record indicates a possible error patent regarding the number of verdicts returned by the jury. Defendant was indicted on three counts of malfeasance in office and one count of injuring public records, but a verdict was returned only as to one count of malfeasance in office. A motion to sever offenses was filed by the State on February 14, 1991, with the State arguing that count two should be tried separately. On May 13, 1991, the court ordered the defendant to show cause on May 15, 1991 as to why the motion should not be granted. The court minutes of May 15, 1991 failed to show whether the court ruled on this motion. At trial, only count two was read to the jury. The record does not show the disposition of the other counts.
La.C.Cr.P. art. 819 provides:
If there is more than one count in an indictment, the jury must find a verdict as to each count, unless it cannot agree on a verdict as to a count.
We will therefore remand the case for a determination of whether the motion to sever was granted and, if not, for a proper disposition of the remaining charges.
For the above reasons, the defendant's conviction and sentence on one count of malfeasance in office is affirmed. The case is remanded for determination of whether the motion to sever was granted *276 and, if not, for a proper disposition of the remaining charges.
AFFIRMED AND REMANDED.