Dear Ms. Davis,
Our response to your opinion request has been modified pursuant to our recent phone conversation. The issues presented in the opinion request are to be addressed only insofar as they apply to the Chief of Police.
You relate that the Mayor of Ferriday appointed the Chief of Police without the confirmation of the Board of Alderman. Under these facts, you and the other aldermen present the following issues for our review.
 (1) What responsibilities does the Mayor of a Lawrason Act Municipality have to the town council to request approval of the town's funds prior to the payment of those funds?
 (2) What actions can be taken by the town council to recover the funds paid without the approval of the town council? Consequently, would the Mayor be personally responsible for the unauthorized payment of these funds?
 (3) Since Mr. Wilson is not approved by the town council, what, if any, responsibility would the town have for Mr. Wilson's "official" actions?
 (4) Is this situation something the town council should advise the legislative auditor about?
At the outset, we note that the Town of Ferriday is a Lawrason Act Municipality subject to the provisions of in LSA-R.S. 33:321,et seq.
As predicate to the issues raised herein, you state that the Town of Ferriday has a nonelected chief of police, governed by the provisions of LSA-R.S. 33:404(A)(3), which in applicable part state:
 . . . appointment or removal of a nonelected chief of police, the municipal clerk, the municipal attorney, or any department head shall be subject to approval by the board of aldermen, except that in the case of a tie vote, the recommendation of the mayor shall prevail. (Emphasis added).
Note that until both the Mayor and the Board of Aldermen concur in the selection of the new Town Chief of Police by the prescribed appointment and confirmation procedure, the chief of police does not legally hold the position. Op. Atty. Gen. No. 88-505.
In response to your first question, the legislative power of the board of aldermen encompasses control of the municipal fisc. Op. Atty. Gen. Nos. 90-612, 90-616. Consequently, the mayor cannot supercede the fiscal control of the town council without the latter's approval.Smith v. Town of Vinton, 209 La. 587, 25 So.2d 237 (La. 1946).
Moreover, the town treasurer can only disburse municipal funds on a warrant "issued by the order of the mayor and board of aldermen." LSA-R.S. 33:425; Op. Atty. Gen. No. 99-612.
Therefore, the mayor's expenditure of municipal funds without a specific appropriation by town council ordinance is a power denied him by law.
In response to your second question, the Mayor's refusal to follow these procedures may subject him to the charge of malfeasance in office, a crime defined by LSA-R.S. 14:134 as follows:
 Malfeasance in office is committed when any public employee shall:
 (1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or
 (2) Intentionally perform any such duty in an unlawful manner; or
 (3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.
 Any duty lawfully required of a public officer or public employee when delegated by him to a public officer or public employee shall be deemed to be a lawful duty of such public officer or employee. The delegation of such unlawful duty shall not relieve the public officer or employee of his lawful duty.
 Whoever commits the crime of malfeasance in office shall be imprisoned for not more than five years with or without hard labor or shall be fined not more than five thousand dollars or both.
Concerning the possible liability of the Mayor for the unauthorized payments to the Chief of Police, we direct your attention to LaFleurv. Roberts, 157 So.2d 340 (La. 1963). The case stands for the proposition that the law limiting or qualifying the authority of a municipal official cannot be disregarded on the basis of the exercise of administrative discretion. The Mayor may be subject to individual liability for a monetary amount if the municipality has suffered pecuniary damage resulting from the Mayor's exercise of power in bad faith. See LaFleur, supra.
Additionally, LSA-R.S. 33:404 imposes an affirmative duty on all mayors to administer in conformity with the ordinances adopted by the board of aldermen. State v. Davis, 614 So.2d 270, 273 (La.App. 2 Cir. 1993). A violation of this duty can constitute the crime of malfeasance in office under LSA-R.S. 14:134. State v. Davis, supra.
Your third question involves whether the town council would be liable for any actions taken by the Mayor's appointee under the guise of his official capacity as the chief of police.
Louisiana jurisprudence has acknowledged the principle of "officer de facto". A de facto officer is defined as "one who is in possession of or who exercises the duties of an office under color of a known and valid appointment or election, but where he failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like." State v. Hargis, 154 So. 628 (La. 1934).
Further, the unauthorized assumption of an office by a person without any color of title may be sufficient to constitute him an officer de facto where he has occupied the office for a considerable length of time with the acquiescence of the public authorities and the public. Garnierv. Louisiana Milk Commission, 8 So.2d 611 (La. 1942).
The jurisprudence relies on this theory mainly for reasons of public policy. If the acts of de facto officers were adjudged invalid, the persons receiving the brunt of any negative repercussions would be third parties and the general public.
Therefore, acts by de facto officers are held to be valid until the officer's title to office is adjudged insufficient. State v.Johnson, 192 So.2d 135 (La. 1966). Until then, the officer's acts are "clothed with the same validity as the acts of de jure officers" and may not be collaterally attacked or inquired into by third persons.
The one weakness in the "officer de facto" theory as it applies to your situation is the Mayor's apparent lack of adherence to appointment procedures. However, this fact alone has apparently not defeated the courts' adherence to the theory. In State v. City of New Orleans,125 So.2d 375, 380-81 (La. 1961), the Louisiana Supreme Court stated that the failure of an appointing officer to secure the required approval of the appointment by a required entity does not preclude the appointee's assuming the status of de facto officer.
Your fourth question is answered by LSA-R.S. 24:513(A)(1), providing:
 A. (1) Subject to Paragraph (3) of this Subsection, the legislative auditor shall have authority to compile financial statements and to examine, audit or review the books and accounts of the state treasurer, all public boards, commissions, agencies, departments, political subdivisions of the state, public officials and employees, public retirement systems enumerated in R.S. 42:698.2(A), municipalities, and all other public or quasi-public agencies or bodies, hereinafter collectively referred to as the "auditee". The scope of the examinations may include financial accountability, legal compliance and evaluations of the economy, efficiency, and effectiveness, of the auditee's programs or any combination of the foregoing. In addition to the authority granted above, the legislative auditor shall have access to and be permitted to examine all papers, books, accounts, records, files instruments, documents, films, tapes, and any other forms of recordation, including but not limited to computers and recording devices, of all auditees. This access shall not be prohibited by Paragraph (3) of this Subsection.
The legislative auditor may audit or investigate a local auditee when "the local auditee exhibits a record of egregious control deficiencies and failures to comply with laws and regulations," or "the legislative auditor has received complaints of illegal or irregular acts with respect to the local auditee." LSA-R.S. 24:513(4)(c) (d). We refer you to the Legislative Auditor at 504-342-7237 for further information.
Your current City Attorney should be consulted concerning any future action of the board taken to resolve these issues. Further, note that LSA-R.S. 14:134 requires an intent to violate the law, and this office cannot render an opinion as to whether the statute was actually violated. Finally, your district attorney may begin an action to remove a usurper from office, under the authority of LSA-R.S. 42:71, et seq.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL