Dear Mayor Amacker:
You have requested that we issue our legal opinion concerning the following two issues:
 1. Can the Board of Aldermen of a Lawrason Act Municipality legally pass a resolution or an ordinance that requires an elected Chief of Police to obtain approval of the Board of Aldermen prior to hiring any personnel in the police department?
 2. Can the Mayor and Clerk of a Lawrason Act Municipality refuse to issue checks to pay any salary or bill of the municipality, which is not within the budget approved by the Board of Aldermen?
The answer to your first question is governed by the provisions of R.S. 33:362 and R.S. 33:423 which pertinently provide:
 § 362 Exercise of municipal powers; legislative, executive
 A. (3) Subject to law, including R.S. 33:423.2 and 423.3, and applicable civil service rules and regulations, the board of aldermen shall, by ordinance, provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees.
 * * * * *
 § 423 Duties of marshal
 A. The marshal shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws. He shall perform all other duties required of him by ordinance. In those municipalities governed by the provisions of this Part, R.S. 33:321 et seq., which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel, for the promotion of officers, to effect disciplinary action, and for dismissal of police personnel. Such nominations or recommendations are to be made regardless of race, color, disability, as defined in R.S. 51:2232(11), or creed.
 B. The provisions of Subsection A of this Section shall not be construed to limit or restrict the provisions of R.S. 33:423.3.
In response to your first question, note that the board of aldermen may create police personnel positions by ordinance, but the hiring is done after recommendation by the chief of police and approval of the mayor and board of aldermen. See Attorney General Opinion 99-48.
In response to your second question, note that the mayor's expenditure of municipal funds without a specific appropriation of the government body is a "power denied him by law." Thus, the Mayor can refuse to pay any salary or bill for which funds have not been appropriated by the governing body. See Attorney General Opinions 94-520, 99-23, and citations therein.
Should you have other questions, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
OPINION NUMBER 94-520
RELEASED OCTOBER 18, 1994
71 MUNICIPALITIES 77 OFFICERS — Local Municipal; Selection, Qualifications Tenure; Vacancies
LSA-R.S. 33:321; LSA-R.S. 14:134; LSA-R.S. 33:404; LSA-R.S. 24:513(A)(1); LSA-R.S. 24:513(4)(c)(d)
Chief of Police of the Town of Ferriday is appointed by the Mayor but must be confirmed by the Board of Aldermen. Further, the Board's legislative powers include control over the municipal fisc, and their express or implicit authorization is required for all public expenditures. The mayor cannot supercede the Board's fiscal control unilaterally.
Ms. Elizabeth A. Davis Alderman, Town of Ferriday 212 N. 2nd Street Ferriday, LA 71334
Dear Ms. Davis,
Our response to your opinion request has been modified pursuant to our recent phone conversation. The issues presented in the opinion request are to be addressed only insofar as they apply to the Chief of Police.
You relate that the Mayor of Ferriday appointed the Chief of Police without the confirmation of the Board of Alderman. Under these facts, you and the other aldermen present the following issues for our review.
 (1) What responsibilities does the Mayor of a Lawrason Act Municipality have to the town council to request approval of the town's funds prior to the payment of those funds?
 (2) What actions can be taken by the town council to recover the funds paid without the approval of the town council? Consequently, would the Mayor be personally responsible for the unauthorized payment of these funds?
 (3) Since Mr. Wilson is not approved by the town council, what, if any, responsibility would the town have for Mr. Wilson's "official" actions?
 (4) Is this situation something the town council should advise the legislative auditor about?
At the outset, we note that the Town of Ferriday is a Lawrason Act Municipality subject to the provisions of in LSA-R.S. 33:321, et seq.
As predicate to the issues raised herein, you state that the Town of Ferriday has a nonelected chief of police, governed by the provisions of LSA-R.S. 33:404(A)(3), which in applicable part state:
 . . . appointment or removal of a nonelected chief of police, the municipal clerk, the municipal attorney, or any department head shall be subject to approval by the board of aldermen, except that in the case of a tie vote, the recommendation of the mayor shall prevail. (Emphasis added).
Note that until both the Mayor and the Board of Aldermen concur in the selection of the new Town Chief of Police by the prescribed appointment and confirmation procedure, the chief of police does not legally hold the position. Op. Atty. Gen. No. 88-505.
In response to your first question, the legislative power of the board of aldermen encompasses control of the municipal fisc. Op. Atty. Gen. Nos. 90-612, 90-616. Consequently, the mayor cannot supercede the fiscal control of the town council without the latter's approval.Smith v. Town of Vinton, 209 La. 587, 25 So.2d 237 (La. 1946).
Moreover, the town treasurer can only disburse municipal funds on a warrant "issued by the order of the mayor and board of aldermen." LSA-R.S. 33:425; Op. Atty. Gen. No. 99-612.
Therefore, the mayor's expenditure of municipal funds without a specific appropriation by town council ordinance is a power denied him by law.
In response to your second question, the Mayor's refusal to follow these procedures may subject him to the charge of malfeasance in office, a crime defined by LSA-R.S. 14:134 as follows:
 Malfeasance in office is committed when any public employee shall:
 (1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or
 (2) Intentionally perform any such duty in an unlawful manner; or
 (3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.
 Any duty lawfully required of a public officer or public employee when delegated by him to a public officer or public employee shall be deemed to be a lawful duty of such public officer or employee. The delegation of such unlawful duty shall not relieve the public officer or employee of his lawful duty.
 Whoever commits the crime of malfeasance in office shall be imprisoned for not more than five years with or without hard labor or shall be fined not more than five thousand dollars or both.
Concerning the possible liability of the Mayor for the unauthorized payments to the Chief of Police, we direct your attention to LaFleur v.Roberts, 157 So.2d 340 (La. 1963). The case stands for the proposition that the law limiting or qualifying the authority of a municipal official cannot be disregarded on the basis of the exercise of administrative discretion. The Mayor may be subject to individual liability for a monetary amount if the municipality has suffered pecuniary damage resulting from the Mayor's exercise of power in bad faith. See LaFleur, supra.
Additionally, LSA-R.S. 33:404 imposes an affirmative duty on all mayors to administer in conformity with the ordinances adopted by the board of aldermen. State v. Davis, 614 So.2d 270, 273 (La.App. 2 Cir. 1993). A violation of this duty can constitute the crime of malfeasance in office under LSA-R.S. 14:134. State v. Davis, supra.
Your third question involves whether the town council would be liable for any actions taken by the Mayor's appointee under the guise of his official capacity as the chief of police.
Louisiana jurisprudence has acknowledged the principle of "officer de facto". A de facto officer is defined as "one who is in possession of or who exercises the duties of an office under color of a known and valid appointment or election, but where he failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like." State v. Hargis, 154 So. 628 (La. 1934).
Further, the unauthorized assumption of an office by a person without any color of title may be sufficient to constitute him an officer de facto where he has occupied the office for a considerable length of time with the acquiescence of the public authorities and the public. Garnierv. Louisiana Milk Commission, 8 So.2d 611 (La. 1942).
The jurisprudence relies on this theory mainly for reasons of public policy. If the acts of de facto officers were adjudged invalid, the persons receiving the brunt of any negative repercussions would be third parties and the general public.
Therefore, acts by de facto officers are held to be valid until the officer's title to office is adjudged insufficient. State v. Johnson,192 So.2d 135 (La. 1966). Until then, the officer's acts are "clothed with the same validity as the acts of de jure officers" and may not be collaterally attacked or inquired into by third persons.
The one weakness in the "officer de facto" theory as it applies to your situation is the Mayor's apparent lack of adherence to appointment procedures. However, this fact alone has apparently not defeated the courts' adherence to the theory. In State v. City of New Orleans,125 So.2d 375, 380-81 (La. 1961), the Louisiana Supreme Court stated that the failure of an appointing officer to secure the required approval of the appointment by a required entity does not preclude the appointee's assuming the status of de facto officer.
Your fourth question is answered by LSA-R.S. 24:513(A)(1), providing:
 A. (1) Subject to Paragraph (3) of this Subsection, the legislative auditor shall have authority to compile financial statements and to examine, audit or review the books and accounts of the state treasurer, all public boards, commissions, agencies, departments, political subdivisions of the state, public officials and employees, public retirement systems enumerated in R.S. 42:698.2(A), municipalities, and all other public or quasi-public agencies or bodies, hereinafter collectively referred to as the "auditee". The scope of the examinations may include financial accountability, legal compliance and evaluations of the economy, efficiency, and effectiveness, of the auditee's programs or any combination of the foregoing. In addition to the authority granted above, the legislative auditor shall have access to and be permitted to examine all papers, books, accounts, records, files instruments, documents, films, tapes, and any other forms of recordation, including but not limited to computers and recording devices, of all auditees. This access shall not be prohibited by Paragraph (3) of this Subsection.
The legislative auditor may audit or investigate a local auditee when "the local auditee exhibits a record of egregious control deficiencies and failures to comply with laws and regulations," or "the legislative auditor has received complaints of illegal or irregular acts with respect to the local auditee." LSA-R.S. 24:513(4)(c) (d). We refer you to the Legislative Auditor at 504-342-7237 for further information.
Your current City Attorney should be consulted concerning any future action of the board taken to resolve these issues. Further, note that LSA-R.S. 14:134 requires an intent to violate the law, and this office cannot render an opinion as to whether the statute was actually violated. Finally, your district attorney may begin an action to remove a usurper from office, under the authority of LSA-R.S. 42:71, et seq.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
OPINION NUMBER 90-616
December 20, 1990
71 — MUNICIPALITIES
LSA-R.S. 33:321 et seq.
Mayor may authorize person to perform services, but may not contractually obligate municipality to pay for services rendered, which power is reserved to Board of Aldermen.
Honorable Melvin J. Guidry, Alderman City of Westwego 419 Avenue A Westwego, LA 70094
Dear Mr. Guidry:
You have requested an opinion of the Attorney General as to whether the mayor of a Lawrason Act municipality can contract for professional services with an insurance agent or other professionals?
The answer is that pursuant to his executive authority as mayor, the mayor may authorize an individual to perform services for the benefit of the City. However, he may not enter into a contract which legally obligates the city to pay for those services without the approval of the Board of Aldermen. The Board's legislative powers includes control over the municipal fisc, and their express or implicit authorization is required for all public expenditures. The mayor cannot Town ofVinton, 209 La. 587, 25 So.2d 237 (1946).
Trusting this to be of sufficient information, I am,
Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
 By: __________________________ CHARLES J. YEAGER Assistant Attorney General
OPINION NUMBER 90-612
December 18, 1990
71 — MUNICIPALITIES
LSA-R.S. 33:321 et seq. LSA-R.S. 33:425, 462
Lawrason Act mayor must, by law, submit an annual budget, and is prohibited from spending village funds on his own authority without specific appropriation by board of aldermen.
Honorable Velma O'Neal Alderman Village of Killian P.O. Box 546 Springfield, LA 70462
Dear Alderman O'Neal:
You have requested an opinion of the Attorney General explicating the powers and duties of the Mayor of a Lawrason Act municipality. LSA-R.S.33:321 et seq.
You report that the Mayor of Killian believes that he has no lawful duty to prepare and submit a budget. LSA-R.S. 33:404A(5) mandates the mayor to "prepare and submit an annual operations budget and a capital improvements budget to the board of aldermen . . ."
You also ask if Louisiana law justifies the mayor's conviction that he may pay or refuse to pay bills of the village without approval or concurrence of the board of aldermen.
The legislative power of the board of aldermen encompasses control of the municipal fisc. The mayor cannot supercede the fiscal control of the board of aldermen unilaterally. Opinion of the Attorney General No. 90-616; Smith v. Town of Vinton, 209 La. 587, 25 So. 237 (1946).
The village treasurer can only disburse municipal funds on a warrant "issued by the order of the mayor and board of aldermen." R.S. 33:425.
A budget does not authorize expenditures. Every expenditure requires an appropriation, and every warrant for withdrawal of funds from the municipal treasury requires a specific ordinance. R.S. 33:462.
Copies of R.S. 33:404, 425 and 462 are attached to this opinion for your information.
You finally ask whether the mayor may take any action he chooses because the Lawrason Act authorizes the mayor to perform any other act necessary for the administration of village affairs. You inquire what are the limitations upon this authority? The answer is found by quoting the whole sentence of R.S. 33:404A(5):
 "To have any other power or perform any other duty as may be necessary or proper for the administration of municipal affairs not denied by law". (Emphasis added)
The expenditure of village funds without a specific appropriation by ordinance of the board of aldermen is a power denied by law. The refusal to submit a budget is an act denied by law. Both actions are also prohibited by the criminal law, R.S. 14:134 (malfeasance, a felony).
Trusting this to be of sufficient information, I am
Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
 By: __________________________ CHARLES J. YEAGER Assistant Attorney General
CJY:jv
OPINION NUMBER 88-505
October 25, 1988
77 — OFFICERS — Local Municipal; Selection, Qualifications Tenure; Vacancies.
L.S.A.-R.S. 33:381.1
R.S. 33:386(A) R.S. 42:2
Town Marshal of Village of Delta is appointed by Mayor but must be confirmed by Board of Aldermen. Present Marshal continues to serve until appointment and confirmation are finalized.
The Honorable Robert Ott Mayor-Elect Village of Delta, Louisiana c/o P.O. Box 60 Delta, Louisiana 71233
Dear Mayor-Elect Ott:
You have requested an opinion as to whether, upon assuming the office of mayor of the Village of Delta in January, 1989, you may replace the incumbent Town Marshal by appointment of a successor. You further inquire whether the office would remain vacant should the Board of Aldermen of Delta refuse to approve or confirm your appointment of a new individual to the office of Town Marshal.
The Village of Delta is a municipality organized under the Lawrason Act, L.S.A.-R.S. 33:321 et seq. Although that Act provides generally for an elected Town Marshal or Chief of Police, R.S. 33:381, it was amended in 1970 to provide for a special election in which a majority of municipal electors voting could authorize the appointment of the Marshal by the Mayor subject to the approval of the Board of Aldermen. R.S.33:381.1. On January 15, 1983, a special election was held according to law in which a majority of electors voting authorized the mayoral appointment of the Town Marshal pursuant to the provisions of R.S. 33:381.1.
You are authorized to appoint a new Town Marshal, or to reappoint the incumbent as you see fit, at the first regular meeting of the Board of Aldermen in the new term of office. R.S. 33:386(A). This appointment is subject to confirmation by the Board of Aldermen. Removal of an appointed Marshal or Chief of Police during your term of office is equally subject to approval of the Board of Aldermen. R.S. 33:404.
Should the Board of Aldermen refuse to confirm your appointment, you must tender a new appointment. Until both the Mayor and Board of Aldermen concur in the selection of the new Town Marshal by the prescribed appointment and confirmation procedure, the incumbent Town Marshal in office at the beginning of your office will continue to exercise the powers and duties of that office. R.S. 42:2 provides:
 "All public officers, whether appointed or elected, shall hold their offices and discharge the duties thereof until their successors are elected or appointed, as the case may be, and duly qualified."
R.S. 42:1 includes the Town Marshal within its definition of public officer.
 In conclusion:
 1. You may appoint a new Marshal;
 2. Your appointment must be confirmed by the Board of Aldermen;
 3. Until both (1) and (2) are complete the current Marshal will continue to serve in that public office.
Trusting this to be of sufficient information, I am
Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
 By: __________________________ CHARLES J. YEAGER Assistant Attorney General
CJY:tm
OPINION NUMBER 99-23
February 24, 1999
71 — Municipalities 77 — Officers R.S. 33:386
R.S. 33:404
While the Mayor can appoint an administrative assistant as an employee, the salary must be budgeted by the Board of Aldermen. The Mayor and not the Board of Aldermen appoints department heads.
Hon. Jack D. Smith La. State Representative District 50 500 Main Street, Room 304 Franklin, LA 70338
Dear Representative Smith:
This office is in receipt of your request for an opinion of the Attorney General in regard to appointment by the Mayor of the Town of Erath of an administrative assistant, and appointment by the Board of Aldermen of a Superintendent of Public Works. The Board of Aldermen has neither approved an allocation in the budget to pay for the salary of the administrative assistant nor has his duties been defined. The administrative assistant would only be answerable to the Mayor. In this regard you ask as follows:
 Does the Mayor of the Town of Erath have the authority to appoint an administrative assistant without approval of the Board of Aldermen inasmuch as the Board of Aldermen has not made an allocation in the budget to pay for the salary/wages of the administrative assistant and the duties of the assistant are not defined?
 Is the Mayor in violation of the State Budget Act and/or Lawrason Act?
 Can this act by the Mayor be considered malfeasance in office?
You additionally ask the following question:
 Would the Board of Aldermen of Erath be within their legal rights to create the position of Superintendent of Public Works and then amend the budget to pay the salary/ wages of this Superintendent. The Board of Aldermen would then appoint someone to fill this position without the Mayor's appointment as a position under the Board of Aldermen's appointments?
We note that R.S. 33:386 provides in part as follows:
 A. At the first regular meeting of the board of aldermen succeeding each regular municipal election, the mayor, subject to confirmation of the board of aldermen, shall appoint a clerk, tax collector, except as provided in R.S. 33:381(D), and all other necessary officers whose election is not provided for in R.S. 33:381. * * *
In accordance with R.S. 33:404 the Mayor is authorized to supervise and direct the operation of all municipal departments other than a police department with an elected chief of police, and has the power to appoint or remove municipal employees.
In response to your question we feel it is significant to determine whether the administrative assistant is an officer of the municipality or an employee. In Ardoin v. Rougeau, 670 So.2d 441, (La.App 1996), the court recognized a test set forth in Cloud v. State, 420 So.2d 1259
(La.App. 1982), cert denied, 423 So.2d 1166, to distinguish between employees and public officials as follows:
 If the individual acts as an agent of the state and exercises a portion of the sovereign power or if the office occupied involves a large degree of independence in which the individual is not under the direct supervision and control of an employer then the individual is a public officer.
In the Ardoin case the court noted that in Williams v. Board ofTrustees, 653 So.2d 1337 (La.App. 1995) the parish attorney was recognized as a public officer, as was the deputy coroner in the Cloud
case, whereas in State v. Haltom, 462 So.2d 662 (La.App. 1984), the parish road superintendent was not a public officer because he was subject to the supervision and control of the police jury. Since the municipal attorney is not under the direct supervision and control of an employer, it was concluded the individual holding the position of municipal attorney is a public officer.
Following this test we would conclude that the assistant administrator is not an officer. While his duties have not been defined, it appears clear he is under the direct supervision and control of the Mayor and cannot exercise a large degree of independence.
Accordingly, we find under the power assigned in R.S. 33:404 to the Mayor "to appoint and remove municipal employees", he would have the authority to appoint an administrative assistant as an employee without the approval of the Board of Aldermen. However, that is not without restrictions.
While this office determined in Atty. Gen. Op. 97-492 that it is appropriate for the mayor to determine if a pay raise is merited, and the amount thereof as to employees who are not deemed to be municipal officers, it was concluded, "Regardless of whether it is the mayor or the board of aldermen who determines whether a particular officer or employee is given a raise, the money for the raise must be budgeted in accordance with the requirements of the Local Government Budget Act, R.S. 39:1301, et seq."
Therefore, while the Mayor may appoint an assistant as an employee without approval of the Board of Aldermen, this appointment is meaningless until the salary is budgeted. In Atty. Gen. Op. No. 94-520 this office was presented with questions relative to the appointment of Chief of Police by the Mayor without the confirmation of the Board of Aldermen. As observed therein by this office the power of the Board of Aldermen encompasses the control of the fisc, and the Mayor cannot supersede the fiscal control of the town council without the latter's approval, and the town treasurer can only disburse municipal funds on a warrant issued by order of the mayor and board of aldermen. Thus, this office stated, "Therefore, the mayor's expenditure of municipal funds without specific appropriation by the town council is a power denied him by law."
The latter opinion further concluded that the Mayor's refusal to follow these procedures of a specific appropriation for expenditure of municipal funds may subject him to the charge of malfeasance in office as defined in R.S. 14:134. This office cited LaFleur v. Roberts, 157 So.2d 340 (La. 1963) for the proposition that the law limiting or qualifying the authority of a municipal official cannot be disregarded on the basis of the exercise of administrative discretion.
We note that R.S. 14:134 in part defines malfeasance in office when any public employee shall "intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or intentionally perform any such duty in an unlawful manner." Thus, to prove malfeasance the State has to prove the public officer intentionally failed to perform a required duty which is, of course a question we cannot answer.
In response to your question whether the Board of Aldermen of Erath may create the position of Superintendent of Public Works and amend the budget to pay the salary of this Superintendent, we find this office has stated in Atty. Gen. Op. 98-58, with reliance upon Bourgere v. Anzelmo,517 So.2d 1121 (La.App. 1987), that an ordinance giving the aldermen authority to appoint a committee to hire, fire, investigate and discipline town employees even with the Mayor's participation was invalid. It was concluded that the Board could only organize the City into various departments upon the Mayor's recommendation, stating, "Any department of a municipality, other than a police department in a municipality with an elected chief of police, shall be created, abolished, merged, or consolidated by the board of aldermen, upon written recommendation of the mayor." Moreover, we do not find the Board would have the authority to appoint someone to fill this position without the Mayor's appointment. R.S. 33:404 gives the Mayor authority to appoint any department head subject to the approval of the board of aldermen, and as previously pointed out "necessary officers" are appointed by the mayor at the first regular meeting of the board of aldermen after the regular election subject to confirmation by the board. Thus, the legislative action of the Board of Aldermen cannot be contrary to that prescribed by statute.
We hope this sufficiently answers you inquiries, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: ____________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR
OPINION NUMBER 99-48
April 29, 1999
71 — MUNICIPALITIES
La. R.S. 33:362(A)(3) La. R.S. 33:423
All employees of the police department, including part-time and auxiliary officers, are included in the term "police personnel."
The board of alderman may create police personnel positions by ordinance, but the filling of the positions is done after recommendation by the chief of police and approval of the mayor and the board of alderman.
The Honorable Deano Thornton, Mayor City of Winnfield P.O. Box 509 Winnfield, Louisiana 71483
Dear Mayor Thornton:
Your request for an Attorney General's opinion has been forwarded to me for research and reply.
Specifically, you ask:
 1) Does the term "police personnel" as referred to in La. R.S. 33:423 include part-time non-civil service officers and auxiliary officers?
 2) What is the procedure for appointing these officers?
The answers to both questions are found in La. R.S. 33:362(A)(3) and 33:423 which are as follows in pertinent part:
 § 362 Exercise of municipal powers; legislative, executive
 A.(3) Subject to law, including R.S. 33:423.2
and 423.3, and applicable civil service rules and regulations, the board of aldermen shall, by ordinance, provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees.
 § 423 Duties of marshal
 A. The marshal shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws. He shall perform all other duties required of him by ordinance. In those municipalities governed by the provisions of this Part, R.S. 33:321 et seq., which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel, for the promotion of officers, to effect disciplinary action, and for dismissal of police personnel. Such nominations or recommendations are to be made regardless of race, color, disability, as defined in R.S. 51:2232(11), or creed.
 B. The provisions of Subsection A of this Section shall not be construed to limit or restrict the provisions of R.S. 33:423.3.
With regard to your first question, this office has repeatedly opined that all employees of the police department, including part-time and auxiliary officers, are included in the term "police personnel." Attached is Louisiana Attorney General Opinion No. 93-386 which deals with the administrative authority over the auxiliary police force and states, "This office has repeatedly recognized that in a Lawrason Act municipality, the elected chief of police has supervisory power and authority over police department personnel."
Your second question asks for the procedures for appointing officers. According to La. R.S. 33:362(A) the board of aldermen, "shall, by ordinance, provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees." This provision is supplemented by La. R.S. 33:423 which states, "In those municipalities . . ., which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel, . . . ." Therefore, the board of aldermen may create police personnel positions by ordinance, but the filling of the positions is done after recommendation by the chief of police and approval of the mayor and the board of aldermen.
We trust this sufficiently answers your questions. However, if you should need further information, do not hesitate to contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ____________________________ FRANCES J. PITMAN ASSISTANT ATTORNEY GENERAL
RPI/FJP/sc