Dear Mayor Capello:
You have requested an opinion of the Attorney General regarding a contract of employment between the City of Donaldsonville (City) and the City Coordinator. You state that the former Mayor and City Council (Council) entered into two City Coordinator Employment Agreements [Agreement(s)]. Attached to your request are unsigned copies of the Agreements, only one of which is complete, and minutes of a Council meeting reflecting the approval and authority to hire the City Coordinator. You have also attached an excerpt of the City of Donaldsonville Charter (Charter) for our reference.
In your written request, you question whether the agreements violate the Charter. Pursuant to our recent telephone conference, you specifically ask whether the provisions of the Agreements relating to the term of office of, and severance pay for, the City Coordinator conflict with Article III, Section 3-03 of the Charter. Section 3-03 provides, in pertinent part, as follows with regard to the appointment of a City Coordinator:
 A. The council shall appoint a city coordinator by the favorable vote of at least three (3) out of the five (5) members. The city coordinator shall serve at the pleasure of the council. (Emphasis added.)
Minutes of a council meeting held on July 10, 1995, reflect that a motion to appoint the City Coordinator was approved by the favorable vote of at least 3 out of 5 Council members. Thus, the appointment, itself, appears to comply with the favorable vote required in Section 3-03. We turn now to the provisions of the complete Agreement and find the following to be relevant to the issue at hand:
 SECTION 2. TERM A. Nothing in this agreement shall prevent, limit or otherwise interfere with the right of the City Council to terminate the services of the City Coordinator at any time, subject only to the provisions set forth in Section 3, Paragraphs A and B, of this agreement.
 * * *
 C. In the event written notice is not given by either party to this contract to the other ninety days (90) prior to the termination date as hereinabove provided, this contract shall be extended on the same terms and conditions as herein provided, all for an additional period of 1 1/2 years. Said contract shall continue thereafter for 1 1/2 year periods unless ninety (90) days written notice is given prior to time of expiration.
 SECTION 3. TERMINATION A. In the event the City Coordinator is terminated by the City Council before expiration of the aforesaid term of employment and during such time the City Coordinator is willing and able to perform the duties of City Coordinator then in that event the City agrees to give three months written notice to the City Coordinator before his employment shall be finally terminated; however, if the City Coordinator is convicted of any felony, he may be terminated immediately.
 * * *
 C. In the event the City Coordinator voluntarily resigns his position with the City, he shall give the city three months notice in advance.
 * * *
 SECTION 8. OTHER TERMS AND CONDITIONS OF EMPLOYMENT A. The City Council shall fix any such other terms and conditions of employment, as it may determine from time to time, relating to the performance of the City Coordinator, provided such terms and conditions are not inconsistent with or in conflict with the provisions of this agreement, The City Charter, City Ordinance or any other law.
As previously noted, the Charter unequivocally provides that the City Coordinator shall serve at the pleasure of the Council. InShows v. Morehouse General Hospital, 463 So.2d 884 (La.App. 2nd
Cir. 1985) writ denied, the court addressed the issue of the validity of contract provisions guaranteeing a hospital employee a two-year term of employment and severance pay. Therein, plaintiff, a former hospital director, filed suit against the hospital service district claiming that he was prematurely and wrongfully discharged contrary to a written employment contract. In denying plaintiff's claim, the Court held, in pertinent part, the following:
 . . . Assuming, apparently as did the trial court, that the advisory commission (1957-1982) had some capacity to enter into a contract of employment with Shows, we find that the contract was limited and must be restricted by legal principles other than the constitutional provision.
 The 1957 ordinance gave the commission the power to represent the public interest; to advise the police jury concerning the hospital; to promulgate rules for the operation of the hospital; to modify or rescind any action of officers or employees of the hospital; and to appoint a director of the hospital who "shall be a full time employee of the hospital and shall receive a salary fixed by the commission. . . [and] shall serve at the pleasure of the commission." The ordinance tracks the "universally accepted" rule that the office of an employee of a public body, where the tenure is not otherwise fixed by law, is held at the pleasure of the authority or body making the appointment. Garnier v. Louisiana Milk Commission, 200 La. 594, 8 So.2d 611 (1942); Potts v. Morehouse Parish School Board, 177 La. 1103, 150 So. 290 (1933). In the absence of a special law such as LRS 17:413 requiring contracts of teachers to be for the scholastic year,it is against public policy to permit public boards to contract away the right to remove employees at will by entering into contracts of employment for definite periods of time.
 If the contract be construed as one requiring either two years "reasonable notice" to Shows before termination or is one that guarantees a two-year term of employment, Shows does not have a cause of action for damages for wrongful termination because the ordinance authorizing the advisory commission to hire a director did not authorize a term of employment. See Poole v. La Salle Parish School Board, 183 So. 182 (La.App. 2d Cir. 1938). Indeed, the ordinance expresses that the director shall serve at the pleasure of the commission. This phrase negates authority to contract for a term and means that the hiring body has absolute authority to remove or discharge the employee without cause at its pleasure. Garnier, supra, 8 So.2d, at p. 614. A contract for a term under such conditions is ultra vires and unenforceable. Hartwig Moss, supra, 19 So.2d, at p. 181. (Emphasis added.)
We find the Shows case, and the cases cited therein, to be applicable to the issue presented for our resolution. As noted above, the provisions of the Charter which empower the Council to appoint the City Coordinator, do not authorize the Council to enter into a contract of employment for a definite period of time, including any renewals thereof. To the contrary, it specifically provides that the City Coordinator serve at the pleasure of the Council.
Accordingly, it is the opinion of this office that the provisions of the contract between the Council and the City Coordinator providing for a fixed term and/or a minimum monthly written notice before termination of employment, are ultra vires and unenforceable.
As previously noted, you have asked that we examine the provisions of the Agreements as they relate to severance pay. We have reviewed both the complete and partial Agreements attached to your request, and can find no reference to severance pay. Nevertheless, it should be noted that the jurisprudence of this state, and prior opinions of this office, consistently hold that the payment of severance pay at the time of termination constitutes a violation of Article VII, Section 14 of the 1974 Louisiana Constitution. Crist v. Parish of Jefferson,470 So.2d 306 (La.App. 5th Cir. 1985) and Attorney General Opinion Nos. 99-52, 96-29, 95-463, 94-474 and 89-411.
We further conclude that the opinions expressed herein, as they relate to fixed-term employment, notice requirements prior to termination and severance pay are applicable to verbal, as well as written agreements. Finally, they would apply to the present, as well as the incoming City Council.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob3/sfj